*59
 
 I,ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 
 *
 

 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Ronnie Banks, Sr., an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public.
 
 In re: Banks,
 
 08-1241 (La.6/18/08), 983 So.2d 1250.
 

 PRIOR DISCIPLINARY HISTORY
 

 Before we address the current charges, we find it helpful to review respondent’s prior disciplinary history. Respondent was admitted to the practice of law in Louisiana in 1982. On September 4, 1986, this court placed respondent on interim suspension following his criminal conviction for felony theft.
 
 [1]
 
 On April 2, 1987, he was disbarred by consent, retroactive to the date of his interim suspension, for his conviction as well as other improper use of client funds.
 
 [2]
 
 After serving his disbarment, respondent applied for readmission to the practice of law. On April 9, 1999, this court granted conditional readmission, subject to a two-year period of probation with conditions.
 
 In
 
 re:
 
 Banks,
 
 98-2516 (La.4/9/99), 731 So.2d 875.
 

 1 ¡Against this backdrop, we now turn to a consideration of the misconduct at issue in the present proceeding.
 

 UNDERLYING FACTS
 

 07-DB-053
 

 Count I
 
 — The
 
 Walmart Matter
 

 In August 2004, respondent took a $7 pair of shoes from a Walmart store in Shreveport without paying for them. In July 2005, he pled no contest to one count of misdemeanor theft of goods. During the hearing wherein he pled no contest, respondent acknowledged that he did not contest the underlying facts that he committed theft when he took the shoes.
 

 Respondent failed to respond to the notice of the complaint sent to him by the ODC, necessitating the issuance of a subpoena to take his sworn statement. During his sworn statement, taken on March 5, 2007, respondent recanted the above facts and insisted that he was simply “exchanging” a pair of shoes he had purchased on a previous visit to the store.
 

 The ODC alleged that respondent violated Rules 8.1(a) (a lawyer shall not knowingly make a false statement of material fact in connection with a disciplinary matter), 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer) of the Rules of Professional Conduct.
 

 
 *60
 

 Count II
 
 — The
 
 Williams Matter
 

 On April 9, 2007, Willie Williams hired respondent to represent him in divorce proceedings. Mr. Williams paid respondent $1,000 for the representation. ^Thereafter, respondent neglected the matter, failing to enroll as Mr. Williams’ counsel or file an answer on his behalf.
 

 On April 18, 2007, respondent appeared at a hearing in the matter. However, the judge would not allow the matter to proceed because no answer had been filed. The judge allowed respondent to file a handwritten answer. When the judge asked respondent why he had not timely filed the answer, respondent falsely stated that he had just been retained the day before.
 

 Thereafter, respondent had no further contact with his client. Despite doing very minimal work for Mr. Williams, respondent did not refund any of the fee he received in connection with the representation.
 

 The ODC alleged that respondent violated Rules 1.5(a) (charging an excessive fee), 1.5(b) (failure to communicate fee arrangement to client), 1.5(c) (contingency fee agreements), and 3.3(a) (a lawyer shall not knowingly make a false statement of fact or law to a tribunal) of the Rules of Professional Conduct.
 

 Count III
 
 — The
 
 Ashley/Jenkins Matter
 

 In May 2004, Odis Ashley hired respondent to represent his son, Otis Jenkins, in an appeal of Mr. Jenkins’ criminal conviction. Mr. Ashley paid respondent $1,300 toward the $2,500 fixed fee.
 

 In December 2004, Mr. Ashley filed a complaint against respondent with the ODC, alleging that respondent failed to file the appeal. In a written response to the complaint, respondent claimed that he had been unable to review the trial transcript because Mr. Ashley refused to pay for its transcription. In a subsequent sworn statement provided to the ODC, respondent claimed that Mr. Ashley was supposed to pay him $1,500 to review the records only and determine whether grounds existed 14for post-conviction relief based on ineffective assistance of counsel. Contrary to his written response to the complaint, respondent stated that he had read the transcript and found no basis for post-conviction relief. However, he was unable to produce any notes, memoranda, or other documentation that he had actually reviewed the transcript.
 

 Despite Mr. Ashley’s complaint that respondent did nothing to earn the $1,300, respondent has not submitted the fee dispute to any forum for resolution.
 

 The ODC alleged that respondent violated Rules 1.5(f)(5) (failure to refund an unearned fee) and 8.1(a) of the Rules of Professional Conduct.
 

 Count IV
 
 — The
 
 Bledsoe Matter
 

 In April 2004, Jarrell Bledsoe hired respondent to handle an uncontested divorce. Mr. Bledsoe paid the agreed-upon fee of $275 and advanced costs of $230.
 

 Thereafter, respondent attempted to pay the filing fees to the Caddo Parish clerk of court with a check drawn on his personal account. However, the check was returned because the account was closed.
 

 Respondent did not file the petition for divorce until November 2004. Thereafter, he failed to obtain a judgment expeditiously. After failing to appear for at least one hearing date, respondent initially obtained a judgment of divorce in an uncontested proceeding. However, the judge set aside the judgment when he realized that the waiver of service executed by Mr. Bled-soe’s estranged wife and submitted by respondent pre-dated the filing of the petition. Respondent did not complete the agreed-upon representation and obtain a
 
 *61
 
 final divorce for Mr. Bledsoe. Nonetheless, respondent did not address the unearned fee issue.
 

 | sThe ODC alleged that respondent violated Rules 1.1 (failure to provide competent representation to a client), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.5(f)(5), 1.15 (safekeeping property of clients and third persons), and 1.16(d) (obligations upon termination of the representation) of the Rules of Professional Conduct.
 

 Count V
 
 — The
 
 Evans Matter
 

 On June 10, 2007, Jacqueline Evans consulted respondent regarding the representation of her son, Brandon Evans, who was facing felony criminal charges. During this initial visit, respondent made unwanted sexually suggestive comments to Ms. Evans, who believed respondent was requesting sexual favors in exchange for his representation of her son. Consequently, she decided not to retain respondent.
 

 Nonetheless, respondent visited Brandon in jail and falsely told him that he had been hired to represent him. On June 14, 2007, respondent mailed Ms. Evans a bill for legal services totaling $1,250 at the rate of $250 per hour and threatened collection efforts if she did not pay the bill.
 

 On June 19, 2007, Ms. Evans filed a complaint against respondent with the ODC. Respondent did not claim the notice of the complaint sent via certified mail and did not respond to the complaint.
 

 The ODC alleged that respondent violated Rules 1.8 (conflict of interest), 8.1(c), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.
 

 |608-DB-032
 

 The Ellison Matter
 

 In July 2007, Tara Ellison hired respondent to handle her divorce and ancillary matters. She paid respondent $1,000 for the representation. However, respondent failed to take any action on Ms. Ellison’s behalf. Accordingly, Ms. Ellison requested a refund. Respondent refused to refund any portion of the $1,000 fee.
 

 In August 2007, Ms. Ellison filed a complaint against respondent with the ODC. Respondent failed to respond, necessitating the issuance of a subpoena to obtain his sworn statement. However, respondent did not appear for the sworn statement.
 

 The ODC alleged that respondent violated Rules 1.3, 1.4 (failure to communicate with a client), 1.5(f)(5), and 8.1(c) of the Rules of Professional Conduct.
 

 DISCIPLINARY PROCEEDINGS
 

 In 2007, the ODC filed the formal charges in 07-DB-053. In 2008, the ODC filed the formal charges in 08-DB-032. Respondent answered both sets of formal charges and denied any misconduct. The two matters were then consolidated and considered by a hearing committee at a formal hearing on the merits.
 

 Hearing Committee Report
 

 After reviewing the testimony and the evidence presented at the hearing, the hearing committee determined that the ODC proved the alleged misconduct by clear and convincing evidence. Specifically, the committee found the following:
 

 |7The Williams matter — Respondent was retained more than a week before the scheduled hearing but did not file an answer. Respondent falsely informed the judge that he had only been retained the day before; thus, he knowingly made a
 
 *62
 
 false statement to the judge. For the $1,000 fee paid by Mr. Williams, respondent appeared in court on one occasion and filed a handwritten answer. The fee “may have been borderline excessive.”
 

 The Ashley/Jenkins matter — -Mr. Ashley paid respondent $1,300 towards a $2,500 fee. In his sworn statement, respondent asserted that he read the trial transcript before giving Mr. Ashley his legal opinion. However, evidence and testimony at the hearing revealed that the trial transcript was not transcribed until after Mr. Ashley discharged respondent. Furthermore, respondent’s hearing testimony was inconsistent with his sworn statement testimony. Thus, respondent is not credible. Respondent refused to provide Mr. Ashley with a refund, claiming he earned the entire fee. However, Mr. Ashley did not agree to an hourly fee, and respondent did not competently complete the appeal; thus, a portion of the fee is unearned.
 

 The Bledsoe matter — -Respondent failed to properly handle this otherwise relatively simple divorce proceeding. Mr. Bledsoe paid respondent $850 and was thereafter required to pay an additional $375 to a new attorney to complete the divorce. Respondent ignored Mr. Bledsoe’s requests for a refund.
 

 The Evans matter — Respondent did not address the encounter with Ms. Evans in his brief, his testimony, or his closing arguments. Ms. Evans’ testimony was credible, and the gist of the charge was that respondent made sexually suggestive comments to Ms. Evans and attempted to sexually seduce her in his office.
 

 |RThe Ellison matter — Respondent took $1,000 from Ms. Ellison to obtain a divorce for her. However, he did absolutely nothing to advance her case. Ms. Ellison demanded a refund and was forced to obtain a new attorney. Respondent did not refund any of the money.
 

 Based on these findings, the committee determined that respondent violated Rules 1.5 (charging an excessive fee), 1.5(f)(5), 1.7 (conflict of interest), 8.1(a), 8.1(c), and 8.4(c) of the Rules of Professional Conduct. For his misconduct, the committee recommended that respondent be permanently disbarred.
 

 Neither respondent nor the ODC filed an objection to the hearing committee’s report and recommendation.
 

 Disciplinary Board Recommendation
 

 After review, the disciplinary board determined that the hearing committee’s factual findings are not manifestly erroneous. However, the board noted that the committee failed to address or make findings regarding the Walmart matter. The board also determined that the committee failed to find several rule violations that are supported by the record. Specifically, the board found the following:
 

 In the Walmart matter, respondent was found guilty of misdemeanor theft pursuant to a plea of
 
 nolo contendere
 
 and failed to file a written response to the complaint against him. Accordingly, respondent violated Rules 8.1(c) and 8.4(b) of the Rules of Professional Conduct. However, the ODC did not prove by clear and convincing evidence that respondent violated Rule 8.1(a). In the Williams matter, respondent violated Rules 3.3(a) and 1.5(a). However, respondent did not violate Rules 1.5(b) or 1.5(c). In the Ashley/Jenkins matter, respondent violated Rules 1.5(f)(5) and 8.1(a). In the Bledsoe matter, respondent violated Rules 1.1, 1.3^21.5(0(5), 1.15, and 1.16(d). In the Evans matter, respondent violated Rules 1.7, 8.1(c), and 8.4(c). In the Ellison matter, respondent violated Rules 1.5(f)(5) and 8.1(c), but did not violate Rules 1.3 and 1.4.
 

 
 *63
 
 Based on these findings, the board determined that respondent knowingly and intentionally violated duties owed to his clients, the public, the legal system, and the legal profession. Respondent caused significant harm to his clients and actual harm to the public, the legal system, and the legal profession. After reviewing the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the board determined that the baseline sanction is disbarment.
 

 The board found numerous aggravating factors present, namely prior disciplinary offenses, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, submission of false evidence, false statements, or other deceptive practices during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and indifference to making restitution. The board found no mitigating factors present.
 

 Considering respondent’s misconduct in light of the permanent disbarment guidelines and the prior jurisprudence of this court, the board recommended that respondent be permanently disbarred. The board also recommended that respondent be ordered to pay restitution for any unearned fees.
 

 Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
 

 I ^DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and eonvinc-ing evidence.
 
 In re: Quaid,
 
 94-1316 (La.11/30/94), 646 So.2d 343;
 
 Louisiana State Bar Ass’n v. Boutall,
 
 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings.
 
 See In re: Caulfield,
 
 96-1401 (La.11/25/96), 683 So.2d 714;
 
 In re: Pardue,
 
 93-2865 (La.3/11/94), 633 So.2d 150.
 

 Respondent has engaged in numerous instances of serious attorney misconduct, including pleading no contest to misdemeanor theft, making false statements to a trial judge, charging excessive fees and/or failing to refund unearned fees, failing to provide competent representation to his client, neglecting legal matters, commingling and converting client funds, making sexually suggestive comments to Ms. Evans and lying to her son about his representation, and making false statements to the ODC and otherwise failing to cooperate in its investigations. The record supports the numerous rule violations found by the disciplinary board.
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and | nmitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 
 *64
 
 Respondent’s conduct was knowing and intentional. He violated duties owed to his clients, the public, the legal system, and the legal profession, causing actual harm. Considering the numerous aggravating factors present in this case, and the absence of mitigating factors, disbarment is clearly appropriate. However, in their respective reports, the hearing committee and the disciplinary board have concluded that respondent’s offenses are so egregious that he should be permanently prohibited from applying for readmission to the bar.
 

 We agree. In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might result in permanent disbarment. Respondent’s conduct falls squarely within the scope of Guideline 9, which provides as follows:
 

 GUIDELINE 9. Instances of serious attorney misconduct or conviction of a serious crime, when the misconduct or conviction is preceded by suspension or disbarment for prior instances of serious attorney misconduct or conviction of a serious crime. Serious crime is defined in Rule XIX, Section 19. Serious attorney misconduct is defined for purposes of these guidelines as any misconduct which results in a suspension of more than one year.
 

 Respondent’s misconduct is serious in nature and was preceded by his 1987 disbarment. Once respondent regained the privilege of practicing law in 1999, he did not see fit to scrupulously conform his conduct to the Rules of Professional Conduct. Instead, within just a few years of his readmission, respondent began engaging in the misconduct that forms the basis of these proceedings. Under these circumstances, we find respondent lacks the good moral character and fitness to practice law in Louisiana and should be permanently disbarred.
 

 [ ^Accordingly, we will accept the disciplinary board’s recommendation and impose permanent disbarment. We will also order respondent to pay restitution for any unearned fees.
 

 DECREE
 

 Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Ronnie Banks, Sr., Louisiana Bar Roll number 2728, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. It is further ordered that respondent shall provide accountings to all persons subject of the formal charges, and make full restitution of any unearned legal fees. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 *
 

 Judge Benjamin Jones, of the Fourth Judicial District Court, assigned as Justice
 
 Pro Tempore,
 
 participating in the decision.
 

 [1]
 

 . Respondent was convicted of theft after he settled a client's personal injury claim for $2,865.75, forged his client’s name on the settlement draft, and cashed it.
 

 [2]
 

 . Respondent failed to disburse settlement proceeds to two clients and neglected a legal matter after having been paid his fee.