*76
 
 ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 
 *
 

 11 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Kimuel Wayne Lee, an attorney licensed to practice law in Louisiana.
 

 UNDERLYING FACTS
 

 Count I
 
 — The
 
 Ridley Succession Matter
 

 By way of background, Theron Ridley, a resident of Minden, Louisiana, passed away on October 31, 1999. In his will, Mr. Ridley named his step-daughter Marsha Laws and his niece Brenda Ridley as the co-executrixes. In total, there were six heirs, including Ms. Laws and Ms. Ridley. Ms. Laws and Ms. Ridley were both residents of California where respondent is also licensed to practice law.
 

 In early 2000, Ms. Laws hired respondent to handle Mr. Ridley’s succession. Despite his lack of competency in succession law, respondent accepted the representation. In a February 12, 2000 letter addressed to Ms. Laws, respondent stated that he would charge $300 per hour not to exceed 15% of the total value of the estate’s assets. Neither Ms. Laws nor Ms. Ridley ever received this letter or agreed to this fee arrangement.
 

 l2When the estate’s assets and liabilities were distributed, respondent claimed to have worked 171.4 hours on the succession, which at $300 per hour amounted to $51,420. In an itemization of the hours worked, respondent itemized only 73.4 hours, noting that the 171.4 hours was the total of the 73.4 itemized hours plus estimated time and charges not included in the itemization. The itemization also indicated that 28.8 hours were spent researching succession law and 9.2 hours were spent compiling the itemization. The court record of the Ridley succession also showed numerous mistakes in the pleadings respondent filed, causing delays in the sale of Mr. Ridley’s house.
 

 The estate’s assets totaled $89,547.46. On the distribution list, respondent indicated that his fee was $13,819.68, which was approximately 15% of the total assets. However, respondent only collected $6,909.84 in fees, noting that he had provided the estate with a “gratuitous refund of 50%” of his fee.
 

 As part of the distribution of the estate’s assets and liabilities, on December 5, 2000, respondent issued a check payable to LSU Shreveport Hospital in the amount of $16,168.60. Thereafter, a collection agency contacted respondent, claiming the hospital had not received the payment. Respondent then negotiated a reduction of the bill to $15,000, which he paid by check dated January 22, 2001, keeping the $1,168.60 reduction for himself. When Ms. Laws and Ms. Ridley learned of the reduction, respondent agreed to refund $768.60 but kept $400 for himself. To that end, on May 20, 2001, respondent issued checks to the Ridley heirs totaling $768.60. One year later, and after Ms. Laws filed a disciplinary complaint against him, respondent refunded the remaining $400 to the heirs on May 24, 2002. In addition to the dispute over the $1,168.60, the complaint alleged the $6,909.84 fee respondent charged was excessive considering his lack of experience in succession law.
 

 |sThe ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a) (failure to provide competent representation to a client), 1.5(a) (charging an
 
 *77
 
 unreasonable fee), 1.15(b) (failure to timely remit funds to clients or third persons),
 
 [1]
 
 and 8.4(a) (violation of the Rules of Professional Conduct).
 

 Count II
 
 — The
 
 Used Car Bid Card Matter
 

 By way of background, respondent’s wife, Janet Lee, is the owner of Foreign Car Sales, LLC, which is authorized to buy and sell used cars. The Louisiana Recreational and Used Motor Vehicle Commission (“Commission”) issued Ms. Lee a bid card that allowed her to purchase used cars at auction. Ms. Lee’s bid card was registered with Insurance Auto Auction (“IAA”), allowing her to bid on cars auctioned by IAA. No one other than Ms. Lee was authorized to bid on cars at the IAA auctions using her bid card identification number.
 

 On January 6, 2005, someone claiming to be respondent called IAA and inquired why his online bidding account with IAA was inactive. Dewanna Wells, an employee of IAA, informed the caller that the only bid card they had on file was for Ms. Lee, and without his own bid card, he would not be allowed to purchase cars from IAA. On January 23, 2005, a bid card under respondent’s name was faxed to IAA. Employees of IAA found the appearance of the bid card to be suspicious and faxed it to the Commission the next day. Upon further investigation, it was determined that the bid card bearing respondent’s name contained Ms. Lee’s bid card identification number.
 

 Thereafter, the Commission brought charges against respondent in the case of
 
 Louisiana Recreational and Used Motor Vehicle Commission versus Janet Lee
 
 |
 
 4D/B/A Foreign Car Sales, LLC and Kimuel Lee,
 
 Docket No. 2005-32. Following an August 16, 2005 hearing before the Commission, respondent was found to have committed a fraudulent act by placing his name on his wife’s bid card and holding himself out as the vehicle salesperson to whom the bid card was licensed, in violation of La. R.S. 32:775(A)(6)(d). The Commission also found that respondent was acting as a used motor vehicle salesperson without a license, in violation of La. R.S. 32:775(A)(1). The Commission fined respondent a total of $750 and assessed him with hearing costs, including $753.68 in attorney’s fees, $171.50 in court reporter fees, and $32.98 for witness subpoenas.
 

 Respondent appealed the Commission’s findings to the 19th Judicial District Court for the Parish of East Baton Rouge. Following a September 5, 2006 hearing, the district court rendered judgment in favor of the Commission. Respondent then appealed the matter to the First Circuit Court of Appeal, which affirmed the district court’s ruling in an unpublished opinion dated November 2, 2007. Respondent’s writ application to this court was denied on April 4, 2008, and consequently, the judgment against him is final.
 
 Foreign Car Sales, L.L.C. v. Louisiana Recreational & Used Motor Vehicle Comm’n,
 
 08-0366 (La.4/4/08), 978 So.2d 330.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.4(a) and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
 

 Count III
 
 — The
 
 Nell Matter
 

 On April 18, 2005, John Nell of A.J. Auto Group purchased a 2001 Dodge 3500 truck from Foreign Car Sales, LLC for $7,500. According to an affidavit signed by Mr. Nell on August 29, 2005, respon
 
 *78
 
 dent showed the vehicle to Mr. Nell and negotiated the sales price on behalf of Foreign Car Sales, LLC. Mr. Nell’s | .^affidavit also indicated that respondent signed Janet Lee’s name to the bill of sale as the salesperson for Foreign Car Sales, LLC and then notarized the document.
 
 [2]
 

 After examining several documents containing both respondent’s handwriting and signature and Ms. Lee’s handwriting and signature, Robert Foley, a handwriting expert, eliminated Ms. Lee as the signer of her name to the bill of sale. Mr. Foley also determined there were indications that respondent signed Ms. Lee’s name to the bill of sale. Additionally, Mr. Foley determined respondent filled out the bill of sale.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.4(a) and 8.4(c).
 

 DISCIPLINARY PROCEEDINGS
 

 In July 2009, the ODC filed formal charges against respondent. Respondent did not answer the formal charges but instead filed a motion to dismiss based on (1) the ten-year delay in the filing of the formal charges and (2) the ODC’s failure to align the charges with the facts. The disciplinary board chair denied the motion, having found that the motion was “not well founded in law or in fact.” Respondent then responded to the formal charges with a general denial of the factual allegations and rule violations. This response also included a peremptory exception of vagueness, an exception of insufficiency of allegations, and a motion to strike. Thereafter, respondent obtained counsel and filed a supplemental response to the formal charges, again denying any misconduct. This matter proceeded to a formal hearing on the merits, conducted by the hearing committee in June and August 2010.
 

 |
 
 (¡Hearing Committee Report
 

 Before addressing the merits of this case, the hearing committee addressed respondent’s exceptions and motion to strike. After determining that the formal charges were sufficiently detailed to put respondent on notice of the conduct and alleged rule violations at issue, the committee concluded the charges contained no insufficient demands or impertinent, redundant, immaterial, or scandalous matter that should be stricken. Accordingly, the committee overruled the exceptions and denied the motion to strike.
 

 Turning to the merits, after considering the testimony and evidence presented at the hearing, the committee made the following factual findings:
 

 The Ridley Succession Matter
 
 — Respondent’s hourly fee rate did not accurately reflect the level of his experience practicing succession law. Respondent also lacked the proper documentation for the work he claimed to have done. For example, respondent purportedly wrote a letter to Ms. Laws on February 12, 2000, in which he informed her that his hourly rate was $300. However, both Ms. Laws and Ms. Ridley testified that respondent never discussed the fee arrangement with them, and both claimed to have never received this letter. Furthermore, respondent did not include the letter in his itemized billing statement. Finally, the committee noted that the font in which the letter was typed did not match the font of letters sent during 2000 and 2001 but did match the font of letters sent after the disciplinary complaint was filed. Based on these facts,
 
 *79
 
 the committee concluded the letter was generated after the disciplinary complaint was filed to bolster respondent’s contention that he disclosed his hourly rate to his clients in advance and that they agreed to the fee.
 

 With respect to Rule 1.1(a) of the Rules of Professional Conduct, the committee found that respondent did not possess the requisite knowledge and skill necessary to handle the succession. Respondent’s filings showed his failure to 17grasp even the basics of succession law. The filings also lacked thoroughness, preparation, and attention to detail. Accordingly, the committee determined respondent violated Rule 1.1(a).
 

 With respect to Rule 1.5(a), the committee found that, despite respondent’s assertions to the contrary, the succession was not complex. There were no novel or difficult questions involved, the succession did not require administration, and the will was not contested. Based on the pleadings in the record, respondent did not devote an inordinate amount of time to this representation. The fee for handling an uncontested succession without administration would likely be between 3% and 5% of the estate’s assets. Interestingly, at 3%, the fee for the succession would have been roughly $2,600, which is very close to what Ms. Laws testified was the fee quoted by the attorney who prepared Mr. Ridley’s will. Ms. Laws was a credible witness, and her version of events and testimony were consistent over time. In actuality, respondent collected a fee that was approximately 7.8% of the estate’s assets, which seems unreasonable given the quality of the representation. Accordingly, the committee determined respondent violated Rule 1.5(a).
 

 With respect to Rule 1.15(b), respondent issued a trust account check in the amount of $16,168.60 to LSU Shreveport Hospital on December 5, 2000. On or before January 22, 2001, respondent negotiated a reduction of the amount due to the hospital from $16,168.60 to $15,000, a difference of $1,168.60. He did not disclose the reduction to his clients. On April 3, 2001, Ms. Ridley was still unaware of the details of the reduction and was still questioning respondent about it. Respondent initially intended to keep the $1,168.60 as a fee; however, when he learned that Ms. Ridley and Ms. Laws had sought the assistance'of counsel, he reduced his fee to $400.' No agreement was ever reached between the heirs and respondent as to the additional compensation that respondent felt he was owed. Respondent refunded the $400 to the heirs on May 24, 2002. Respondent did not |snotify his clients promptly of the reduction. Respondent’s argument that he did not notify his clients because the funds were his earned fee is without merit. The committee believes respondent knew the funds were not his but simply did not think he would get caught. Accordingly, the committee determined respondent violated Rule 1.15(b).
 

 The Used Car Bid Card Matter
 
 — The committee found there was no question that the bid card was altered. Respondent’s defense was that he did not alter the bid card. Instead, he contended that Simon Grant, who was authorized to pick up and pay for cars bought by Foreign Car Sales, LLC, altered it using information previously provided by respondent and his wife. Mr. Grant admitted he called IAA claiming to be respondent, falsified the bid card, and faxed the altered bid card to IAA. While the committee found Mr. Grant to not be a very credible witness, it acknowledged that he admitted altering the bid card without respondent’s knowledge, and the ODC had no way to counter Mr. Grant’s testimony. The Commission did not have the benefit of Mr. Grant’s
 
 *80
 
 admission. In light of Mr. Grant’s admission, the committee found that respondent did not alter the bid card. Mr. Grant also explained that the information necessary to make the alteration to the bid card was in his possession for legitimate reasons and that he used this information to alter the bid card without respondent’s knowledge or concurrence. Since the ODC did not rebut Mr. Grant’s testimony, it failed to carry its burden of proving that respondent violated Rule 8.4(c) with respect to the bid card.
 

 The Nell Matter
 
 — By his own admission, respondent negotiated the sale with Mr. Nell. Robert Foley, an expert forensic document examiner, testified that Janet Lee did not sign her name to the bill of sale. Ms. Lee testified that she did sign her name to the bill of sale, but her testimony completely lacked any semblance of credibility. Based on this evidence, the committee found that Ms. |9Lee’s purported signature on the bill of sale, which was notarized by respondent, was in fact not her signature. The salesperson was not Ms. Lee but respondent, who was not a licensed salesperson at the time. As such, the bill of sale was substantively false on this point. Furthermore, respondent’s notarial attestation was false as to who signed the document as the salesperson. Accordingly, the committee determined respondent violated Rule 8.4(c) in this count.
 

 Turning to the issue of an appropriate sanction, the committee determined the baseline sanction is suspension based on the ABA’s
 
 Standards for Imposing Lawyer Sanctions.
 
 In aggravation, the committee found the following factors: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, submission of false evidence, false statements, or other deceptive practices during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law (admitted 1989). In mitigation, the committee found only the absence of a prior disciplinary record.
 

 After further considering this court’s prior jurisprudence involving similar misconduct, the committee recommended respondent be suspended from the practice of law for two years, followed by probation. The committee further recommended respondent be ordered to make restitution to the Ridley estate in the amount of $4,409.84, plus legal interest from the date of distribution.
 
 [3]
 

 Both respondent and the ODC objected to the hearing committee’s report and recommendation. Specifically, in the Used Car Bid Card matter, the ODC argued that the committee should not have based its findings on Mr. Grant’s testimony after he was found not to be credible. Respondent objected to the committee’s findings with respect to the Ridley Succession matter and the Nell matter, and argued that the appropriate sanction is a public reprimand.
 

 11(VDisciplinary Board Recommendation
 

 After review, the disciplinary board determined the hearing committee’s factual findings are not manifestly erroneous and adopted same. The board also determined the committee correctly applied the Rules of Professional Conduct.
 

 The board determined respondent violated Rule 1.1(a) in that he lacked the legal knowledge and skill necessary to handle the Ridley succession. His filings were riddled with errors and clearly illustrated his inexperience, and his lack of knowledge
 
 *81
 
 and skill contributed to the excessive accumulation of fees.
 

 The board also determined respondent violated Rule 1.5(a) in that he was trying to learn the law as he worked on the case, which caused him to spend an extraordinary amount of time on the case, accumulating excessive fees. His ultimate fee amounted to 7.5% of the total estate, which was considerably higher than what was customarily charged in the locality for similar legal services. Furthermore, based on respondent’s itemization of his time, he charged $300 per hour whether he drafted a motion or spent time visiting the law library to get up to speed on the law, which hardly seems reasonable.
 

 The board further determined respondent violated Rule 1.15(b). Respondent’s assertion that he immediately communicated the LSU Shreveport Hospital bill reduction to his clients is not supported by any evidence in the record and was specifically refuted by the testimony of his clients. Respondent also would not have been entitled to the $1,168.60 reduction as his fee because his fee was based on the estate’s value, which was not affected by the reduction. Furthermore, any discrepancy between the distribution schedule and the amount actually disbursed cannot be said to accrue in favor of the attorney.
 

 Finally, the board determined respondent violated Rule 8.4(c) in the Nell matter. The board found it difficult to accept respondent’s contention that the bill of sale was not an actual bill of sale given the warranty disclaimer language |n contained in the document and the fact that respondent received a cash payment from Mr. Nell when he provided Mr. Nell with the document. Furthermore, a substantial risk of harm to Mr. Nell existed if the bill of sale was challenged because of a forged signature.
 

 The board determined respondent knowingly violated a duty owed to the Ridley heirs, causing them actual harm. He also violated duties owed to the public and the legal system by notarizing a document he knew contained false information, causing a substantial risk of harm. After considering the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the board determined the baseline sanction is suspension.
 

 The board adopted the aggravating and mitigating factors found by the committee. Additionally, the board found the mitigating factor of delay in the disciplinary proceedings.
 

 After further considering this court’s prior jurisprudence involving similar misconduct, the board recommended respondent be suspended from the practice of law for two years. The board further recommended respondent be ordered to submit the fee dispute with the Ridley heirs to the Louisiana State Bar Association’s Fee Dispute Resolution Program. Finally, the board recommended respondent be assessed with all costs and expenses of these proceedings.
 

 Neither respondent nor the ODC filed a timely objection in this court to the disciplinary board’s recommendation. However, after the expiration of the time for filing objections under Supreme Court Rule XIX, § 11(G)(1), respondent sought to file a “late” objection. On February 8, 2012, we issued an order rejecting respondent’s objection as untimely and therefore procedurally improper, but | ^permitting the filing of briefs, without oral argument. Respondent and the ODC both filed briefs in response to the court’s order.
 
 [4]
 

 
 *82
 
 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Banks,
 
 09-1212 (La.10/2/09), 18 So.3d 57.
 

 The record in this matter supports the hearing committee’s factual findings. In the Ridley Succession matter, respondent failed to provide competent representation, charged and collected an excessive fee, and failed to promptly remit funds to the heirs. In the Nell matter, respondent engaged in dishonest conduct by notarizing his wife’s forged signature on the bill of sale when he was the actual salesperson for the transaction. Based on these facts, we agree with the rule violations found by the committee and the disciplinary board. We also agree that the ODC failed to prove by clear and convincing evidence that respondent violated the Rules of Professional Conduct in the Used Car Bid Card matter, given its failure to refute Mr. Grant’s testimony.
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 |13So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 Respondent knowingly violated duties owed to his clients, the public, the legal system, and the legal profession. He caused actual harm in the Ridley Succession matter and potentially significant harm in the Nell matter. The baseline sanction for this type of misconduct is suspension. The record supports the aggravating and mitigating factors found by the board.
 

 Turning to the issue of an appropriate sanction, we find guidance from the case of
 
 In re: Arbour,
 
 05-1189 (La.11/29/05), 915 So.2d 345. In
 
 Arbour,
 
 an attorney mishandled a succession, including collecting an excessive fee, and we suspended him from the practice of law for two years. Given that respondent’s misconduct in the Ridley Succession matter was not as egregious as the misconduct found in
 
 Arbour
 
 and that his notarial misconduct did not result in actual harm, we find the two-year suspension recommended by the board is the appropriate sanction in this case.
 

 Accordingly, we will adopt the board’s recommendation and suspend respondent from the practice of law for two years. We will further order respondent to submit the fee dispute with the Ridley heirs to the Louisiana State Bar Association’s Fee Dispute Resolution Program.
 

 DECREE
 

 Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record and the briefs filed by the parties, it is ordered that Kimuel Wayne Lee, Lou
 
 *83
 
 isiana Bar Roll number 19682, be and he hereby is suspended from.the practice of law for two years. It is further 114ordered that respondent submit the fee dispute with the Ridley heirs to the Louisiana State Bar Association’s Fee Dispute Resolution Program. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid,
 

 *
 

 Chief Justice Kimball not participating in the opinion.
 

 [1]
 

 . This provision was applicable at the time of respondent’s alleged misconduct. An attorney’s duty to timely remit funds to clients and third persons is now set forth in Rule 1.15(d).
 

 [2]
 

 . The document was not labeled as a bill of sale but, nevertheless, served the same purpose as a bill of sale.
 

 [3]
 

 . The restitution amount is the difference between what respondent actually charged the Estate of Theron Ridley less the amount the committee felt would have been an appropriate fee under the circumstances.
 

 [4]
 

 . Among other arguments raised in his brief, respondent asserted that the costs and expenses assessed against him should be reduced by one-third since he was found not to
 
 *82
 
 have engaged in misconduct in one of the three counts. In this regard, respondent should follow the procedures for objecting to costs as set forth in Supreme Court Rule XIX, Appendix A, Rule 7.