# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                    NEWS RELEASE #053

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **5th day of December, 2018**, are as follows:

**PER CURIAM:**

2018-B-0849      IN RE: MICHAEL SEAN REID

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record and the brief filed by the ODC, it is ordered that Michael Sean Reid, Louisiana Bar Roll number 27622, be and he hereby is disbarred, retroactive to December 9, 2016, the date of his interim suspension. His name shall be stricken from the roll of attorneys, and his license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent shall provide accountings and make restitution to the clients who are the subjects of the formal charges and/or to the Client Assistance Fund, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

CLARK, J., dissents for the reasons assigned by Justice Crichton.
CRICHTON, J., dissents, would impose permanent disbarment, and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2018-B-0849

IN RE: MICHAEL SEAN REID

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Michael Sean Reid, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public. *In re: Reid*, 16-1641 (La. 12/9/16), 207 So. 3d 1039.

**FORMAL CHARGES**

*Count I*

In June and July 2016, the ODC received notices from respondent's bank indicating his trust account was overdrawn on four occasions between May 31, 2016 and July 12, 2016. On July 2, 2016, in response to the first overdraft notice, respondent indicated he was battling depression and wanted to surrender his law license temporarily while dealing with those issues. Respondent also admitted to the ODC that he had "not maintained client funds in the manner prescribed by the rules of professional conduct."

On July 13, 2016, the ODC mailed a letter to respondent seeking additional information; however, the letter was returned unclaimed. On August 9, 2016, an ODC staff investigator personally served respondent with a copy of its July 13, 2016 correspondence, along with copies of the three additional overdraft notices. At that time, respondent executed a HIPAA release, allowing the ODC to communicate

directly with the Judges and Lawyers Assistance Program ("JLAP") about respondent. Respondent failed to respond to the ODC's requests for additional information, and he failed to provide an explanation for the three additional overdrafts.

On August 24, 2016, the ODC received a letter from Buddy Stockwell, the Executive Director of JLAP, advising that respondent had contacted their office on July 11, 2016 and reported his drug and alcohol abuse, as well as his stress and anxiety. JLAP referred respondent to a detox facility and recommended a multi-day assessment. Mr. Stockwell stated that his office had not heard anything further from respondent since the July 11, 2016 telephone conversation.

The ODC alleged that respondent's conduct violated Rules 1.15(a) (safekeeping property of clients or third parties), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.

*Count II*

Respondent's former client, Dawn Meehan, received a refund check drawn on respondent's trust account. However, when Ms. Meehan attempted to negotiate the check, it was dishonored due to insufficient funds in the account. The ODC provided respondent with a copy of Ms. Meehan's disciplinary complaint, but he failed to respond to the complaint.

The ODC alleged that respondent's conduct violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.15(a), 8.1(c), and 8.4(c) of the Rules of Professional Conduct.

*Count III*

In September 2015, Daniel Pefferkorn hired respondent to represent him in a divorce and community property matter, paying respondent a $3,500 retainer fee. During the representation, respondent changed his address multiple times. Because of the many address changes, Mr. Pefferkorn's vehicle title was lost in the mail, and he had to pay an additional $85 to order a duplicate title.

Respondent's January 4, 2016 invoice indicated that Mr. Pefferkorn still had $2,942.55 left of his retainer fee. However, respondent's trust account records for January 1, 2016 through May 31, 2016 revealed that the balance in the account dropped below the amount belonging to Mr. Pefferkorn on numerous occasions.

At some point, respondent abandoned his law practice and failed to return Mr. Pefferkorn's telephone calls. Mr. Pefferkorn's last contact with respondent was on August 17, 2016. On August 31, 2016, Mr. Pefferkorn sent a letter to respondent, via certified mail, terminating respondent's services, requesting a copy of his file, and requesting a refund of the unearned fees. Respondent failed to respond to these requests, hindering Mr. Pefferkorn's ability to retain new counsel.

On October 3, 2016, respondent received notice from the ODC of Mr. Pefferkorn's disciplinary complaint against him. Nevertheless, he failed to respond to the complaint.

The ODC alleged that respondent's conduct violated Rules 1.3, 1.4, 1.5(f)(5) (failure to refund an unearned fee), 1.15(a), 1.16(d) (obligations upon termination of the representation), 8.1(c), and 8.4(c) of the Rules of Professional Conduct.

*Count IV*

In May 2016, Blake and Tiffany Savoie hired respondent to handle their child support and child custody modification matter. Initially, the Savoies paid respondent

a $125 consultation fee. However, in June 2016, they paid respondent a $1,500 retainer fee and took respondent's advice to first file for child support.

Thereafter, respondent failed to file the child support pleadings with the court and failed to return the Savoies' telephone calls. Respondent abandoned his law practice, and the Savoies have been unable to locate him.

On October 3, 2016, respondent received notice from the ODC of the Savoies' disciplinary complaint against him. Nevertheless, he failed to respond to the complaint.

The ODC alleged that respondent's conduct violated Rules 1.3, 1.4, 1.5(f)(5), 1.15(a), 1.16(d), 8.1(c), and 8.4(c) of the Rules of Professional Conduct.

*Count V*

In April 2016, Bridget Tilley hired respondent to handle a child support and custody matter. Ms. Tilley paid respondent a $3,500 retainer fee on April 20, 2016 and another $3,500 on May 16, 2016. Respondent made one court appearance on Ms. Tilley's behalf. Thereafter, respondent stopped returning Ms. Tilley's telephone calls and e-mails, and failed to appear for a Hearing Officer Conference ("HOC"). Respondent also failed to file orders requested by the court, and Ms. Tilley was forced to do all of her own work, including preparing the documents for the HOC. Eventually, respondent's telephone number was disconnected.

On October 3, 2016, respondent received notice from the ODC of Ms. Tilley's disciplinary complaint against him. Nevertheless, he failed to respond to the complaint.

The ODC alleged that respondent's conduct violated Rules 1.3, 1.4, 1.5(f)(5), 1.15(a), 1.16(d), 8.1(c), and 8.4(c) of the Rules of Professional Conduct.

*Count VI*

In September 2015, Hayley Simmons hired respondent to represent her in a divorce, community property, child support, and custody matter. Ms. Simmons paid respondent a $250 consultation fee and a $3,500 retainer fee for the representation.

On September 15, 2015, respondent filed a petition for divorce on Ms. Simmons' behalf. On August 16, 2015, Ms. Simmons e-mailed respondent's secretary for instructions and inquired about any scheduled court dates. After not receiving a response, Ms. Simmons called respondent's office and learned that the telephone number had been disconnected. Ms. Simmons eventually obtained respondent's cell phone number, but he has not answered any of her calls.

Respondent's invoice of April 30, 2016 to Ms. Simmons indicated her retainer balance was $1,436.82. However, respondent's trust account records indicate that the trust account balance dropped below the amount belonging to Ms. Simmons on numerous occasions.

On October 13, 2016, respondent received notice from the ODC of Ms. Simmons' disciplinary complaint against him. Nevertheless, he failed to respond to the complaint.

The ODC alleged that respondent's conduct violated Rules 1.3, 1.4, 1.5(f)(5), 1.15(a), 1.16(d), 8.1(c), and 8.4(c) of the Rules of Professional Conduct.

*Count VII*

Michael O'Niell hired respondent to represent him in a divorce matter. Mr. O'Niell last met with respondent on July 13, 2016 to review for an upcoming HOC. However, opposing counsel requested a continuance, and respondent e-mailed Mr. O'Niell that he would let him know when the HOC was rescheduled. Mr. O'Niell heard nothing further from respondent. Therefore, he called the hearing officer's

office and learned the HOC had been rescheduled for September 30, 2016, which forced him to retain new counsel.

On October 13, 2016, respondent received notice from the ODC of Mr. O'Niell's disciplinary complaint against him. Nevertheless, he failed to respond to the complaint.

The ODC alleged that respondent's conduct violated Rules 1.3, 1.4, 1.5(f)(5), 1.15(a), 1.16(d), 8.1(c), and 8.4(c) of the Rules of Professional Conduct.

*Count VIII*

In April 2016, Shay Lambright hired respondent to represent him in a child support matter. Mr. Lambright paid respondent a $250 consultation fee and a $3,500 retainer fee and, on April 26, 2016, signed a contract stating he agreed to be charged at a rate of $250 per hour.

Respondent sent a letter of representation to opposing counsel and requested a continuance of the June 2, 2016 court date. On April 29, 2016, Mr. Lambright's wife sent respondent several e-mails containing documents needed for the case. On May 24, 2016, Mr. Lambright received an e-mail from respondent's assistant, informing him that the new court date was set for July 18, 2016 and that discovery responses were due on July 11, 2016.

Mr. Lambright met with respondent on July 13, 2016 to discuss case strategy. During this meeting, respondent informed Mr. Lambright about certain medical issues he allegedly was experiencing. Mr. Lambright agreed to a continuance should respondent's health issues escalate.

On July 15, 2016, Mr. Lambright texted respondent to confirm the court date on July 18, 2016. When he received no response, Mr. Lambright called respondent and left a voicemail. In response, respondent stated that he was in the hospital and would try to call the court to request a continuance. Mr. Lambright informed

respondent he still planned to attend court on July 18, 2016 and asked respondent about providing a doctor's note to give to the court. However, respondent failed to respond and did not appear in court. The judge stated that, since respondent did not contact the court to request a continuance, Mr. Lambright had ten days to provide the discovery responses to opposing counsel.

On July 24, 2016, Mr. Lambright mailed respondent correspondence, in which he terminated respondent's services. Respondent failed to acknowledge receipt of the letter or return the balance of Mr. Lambright's retainer fee. Based upon a June 13, 2016 invoice respondent provided to Mr. Lambright, his retainer balance was $3,422.06. However, respondent's trust account records indicate that the balance in the trust account dropped below the amount belonging to Mr. Lambright on numerous occasions.

On October 17, 2016, respondent received notice from the ODC of Mr. Lambright's disciplinary complaint against him. Nevertheless, he failed to respond to the complaint.

The ODC alleged that respondent's conduct violated Rules 1.3, 1.4, 1.5(f)(5), 1.15(a), 1.16(d), 8.1(c), and 8.4(c) of the Rules of Professional Conduct.

*Count IX*

In April 2016, Lauren Choate hired respondent to represent her in a community property matter. On April 11, 2016, Ms. Choate paid respondent a $2,250 retainer fee. Thereafter, Ms. Choate began having issues with her ex-husband regarding child custody and requested that respondent also represent her in that matter. On April 18, 2016, Ms. Choate paid respondent an additional $1,500 retainer fee for the custody matter. Respondent neglected both of Ms. Choate's legal matters and failed to communicate with her.

On October 19, 2016, respondent received notice from the ODC of Ms. Choate's disciplinary complaint against him. Nevertheless, he failed to respond to the complaint.

The ODC alleged that respondent's conduct violated Rules 1.3, 1.4, 1.5(f)(5), 1.15(a), 1.16(d), 8.1(c), and 8.4(c) of the Rules of Professional Conduct.

## DISCIPLINARY PROCEEDINGS

In February 2017, the ODC filed formal charges against respondent, as set forth above. Respondent failed to answer the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee's consideration.

The ODC, however, filed a submission on sanctions with numerous exhibits for the hearing committee's consideration, including the transcript of the November 15, 2016 hearing on the petition for respondent's interim suspension. While respondent did not appear at the interim suspension hearing, having e-mailed the committee chair that he was "currently out of state indefinitely, receiving treatment and temporary employment," several of the clients who filed disciplinary complaints against him testified at this hearing, as follows:

Ms. Meehan testified that she paid respondent a $1,500 retainer to represent her in a custody matter. She indicated respondent never performed any services for her. He provided a $1,125 refund in the form of a check that was returned because of insufficient funds in his account. Without the refund from respondent, she had no means to retain another attorney to represent her.

8

Mr. Pefferkorn testified that he hired respondent in September 2015 to represent him in a divorce and community property matter. He paid respondent a $3,500 retainer and understood that respondent would charge $250 per hour against the retainer. Thereafter, scheduled hearings in Mr. Pefferkorn's case had to be continued because respondent failed to perform certain tasks in advance of the hearings. According to respondent's January 4, 2016 invoice, Mr. Pefferkorn still had $2,942.55 on deposit with respondent. Respondent informed Mr. Pefferkorn that he was shutting down his office for medical reasons. He has not returned the unearned fee despite Mr. Pefferkorn's request for a refund.

Ms. Savoie testified that she paid respondent a $1,500 flat fee, plus $250 for court costs, to represent her in a child support matter. Thereafter, respondent failed to file any documents with the court and stopped communicating with Ms. Savoie. She never received a refund of the unearned fees and costs, nor was her file returned to her. She and her husband had to sell a truck to raise the funds to hire another attorney.

Ms. Tilley testified that she paid respondent a total of $7,000 to represent her in a custody matter. Respondent performed some initial work and attended one hearing. However, he failed to appear at the HOC, and Ms. Tilley had to represent herself. Thereafter, Ms. Tilley had difficulty communicating with respondent before he stopped communicating altogether, and despite her numerous requests, she never received a refund of unearned fees.

Ms. Simmons testified that she paid respondent a $3,500 retainer in September 2015 to represent her in a divorce and child custody matter. Although respondent filed a petition for divorce and a consent judgment of agreed-upon child support and custody, by the time the one-year separation period arrived, Ms. Simmons was not able to get in contact with respondent. At that time, she learned that respondent's office telephone had been disconnected and that his office was vacant. Based on

invoices, as of February 15, 2016, the sum of $1,462.31 of her initial retainer was unused. Because respondent did not refund the unearned fee, she had to borrow funds to retain a new attorney.

Mr. Lambright testified that, in April 2016, he paid respondent a $3,500 retainer to represent him in a custody matter. He also indicated that respondent would charge $250 per hour against the retainer. Thereafter, respondent performed very little work and, in July 2016, told Mr. Lambright that he was having medical issues. Mr. Lambright attempted to communicate with respondent about continuing a scheduled hearing due to respondent's medical problems. Ultimately, though, respondent failed to continue the hearing and failed to appear on the scheduled date. On July 24, 2016, Mr. Lambright terminated respondent's representation. Respondent did not respond to the termination letter, did not refund the $3,422.06 balance of the retainer, and did not return Mr. Lambright's file. Respondent also never advised Mr. Lambright he was shutting down his practice.

Ms. Choate testified that, in April 2016, she paid respondent a total retainer of $3,750 to represent her in a child custody and community property matter. Thereafter, respondent failed to do any work on her case and failed to communicate with her. Nevertheless, respondent did not refund the unearned fee, which hindered her ability to retain a new attorney.

The ODC's submission on sanctions also included a copy of Mr. Stockwell's letter to the ODC regarding respondent's communications with JLAP. In the letter, Mr. Stockwell informed the ODC that respondent indicated during a July 11, 2016 telephone call with JLAP that he had been drinking several nights per week and taking 5mg of Xanax daily as prescribed by his psychiatrist to manage his anxiety. Respondent also indicated he abruptly discontinued taking Xanax the day before contacting JLAP. JLAP recommended respondent immediately go to Palmetto Addiction Recovery Center to detox and then complete a multi-day assessment at a

JLAP approved facility. Respondent indicated he would "begin steps to obtain funds to complete the recommendations." JLAP had no further contact with respondent and has no knowledge as to whether respondent followed the recommendations.

Additionally, the ODC submitted an August 31, 2016 affidavit of the ODC's forensic auditor. The auditor reported in an affidavit that she had reviewed respondent's trust account records for the period between January 2016 and June 2016, which respondent provided with his July 2, 2016 response to the ODC. The review revealed that respondent "regularly misused his trust account via checks written to [sic] payable to 'cash.'" The review also showed two trust account checks payable to Albertsons, one check payable to Rouse's Market, one bank draft for Cox, and one payment for an Infiniti auto loan. Further information provided by respondent revealed that his trust account should contain $950 of unearned fees to be refunded to his clients. However, because of the balance in the trust account during the review period, the ODC's auditor believes there was a minimum shortage of $875.71 during this time. The ODC's auditor further indicated that respondent did not provide sufficient information to make any conclusions other than the above misuse of client funds.

*Hearing Committee Report*

After considering the ODC's submission on sanctions, the hearing committee accepted that the factual allegations contained in the formal charges were deemed admitted upon respondent's failure to file an answer. The committee then made factual findings consistent with the deemed admitted factual allegations. Based on those facts, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges.

The committee determined that respondent intentionally violated duties owed to his clients, the public, the legal system, and the legal profession. After

considering the ABA's *Standards for Imposing Lawyer Sanctions*, the committee determined that the baseline sanction is disbarment.

In aggravation, the committee found the following: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, substantial experience in the practice of law (admitted 2001), and indifference to making restitution. The committee also determined that respondent has not come forward with any evidence in support of mitigating factors.

In addressing the issue of an appropriate sanction, the committee emphasized respondent's repeated failure to refund unearned fees to multiple clients. The committee determined that this conduct implicates Guideline 1 (repeated or multiple instances of intentional conversion of client funds with substantial harm) of the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix E.

Accordingly, the committee recommended respondent be permanently disbarred. The committee also recommended that respondent be ordered to make full restitution to the clients who are the subjects of the formal charges.

Neither respondent nor the ODC filed an objection to the hearing committee's report.

*Disciplinary Board Recommendation*

After review, the disciplinary board acknowledged that the factual allegations of the formal charges were deemed admitted and proven. The board also determined that the hearing committee's factual findings are supported by the deemed admitted factual allegations and/or by the evidence submitted in support of the factual

allegations. The board adopted the committee's conclusions that respondent violated the Rules of Professional Conduct as charged.

The board determined that respondent intentionally violated duties owed to his clients, the public, the legal system, and the legal profession. His conduct caused actual harm to his clients and the legal system and is the type of conduct that erodes the public's confidence in lawyers and the legal system. The board agreed with the committee that the baseline sanction is disbarment. The board also agreed with the aggravating factors found by the committee. In mitigation, the board found the absence of a prior disciplinary record.

The board noted that the record includes references to (1) respondent's history of practice for nearly fifteen years without prior discipline, (2) the relatively brief period of time during which the misconduct occurred, and (3) respondent's assertion that he was dealing with depression, anxiety, and related physical impairments at the time of his misconduct. Although the record lacks clear medical evidence, the questions raised as to respondent's mental and physical health convinced the board respondent should not be permanently disbarred. The board also concluded that the imposition of disbarment, rather than permanent disbarment, will adequately protect the public while not unduly punishing respondent.

Accordingly, the board recommended respondent be disbarred. The board further recommended that respondent be ordered to provide accountings and make restitution to the clients who are the subjects of the formal charges and/or to the Client Assistance Fund, as appropriate. One board member dissented and would recommend permanent disbarment.

The ODC filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b). Prior to oral argument, the ODC filed a motion seeking to

waive oral argument based on respondent's failure to file a brief. We granted the motion on July 27, 2018.

## DISCUSSION

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57.

In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. *In re: Donnan*, 01-3058 (La. 1/10/03), 838 So. 2d 715.

The record in this matter supports a finding that respondent neglected legal matters, failed to communicate with clients, failed to refund unearned fees, allowed his client trust account to become overdrawn on four occasions, and failed to cooperate with the ODC in its investigations. As such, he has violated the Rules of Professional Conduct as charged.

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain

high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

Respondent has intentionally violated duties owed to his clients and the legal profession. His conduct caused actual harm to his clients. The baseline sanction for this type of misconduct is disbarment. Aggravating factors include a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, vulnerability of the victims, substantial experience in the practice of law, and indifference to making restitution. In mitigation, the record supports the absence of a prior disciplinary record and personal and emotional problems relating to respondent's mental health and substance abuse issues.

Under the circumstances, we will adopt the board's recommendation and disbar respondent, retroactive to December 9, 2016, the date of his interim suspension. We will further order that respondent provide accountings and make restitution to the clients who are the subject of the formal charges and/or to the Client Assistance Fund, as appropriate. We caution respondent that should he decide to seek readmission in the future, he will be required to show compliance by clear and convincing evidence with each subsection of Supreme Court Rule XIX, § 24 before he will be allowed to return to the practice of law.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record and the brief filed by the ODC, it

is ordered that Michael Sean Reid, Louisiana Bar Roll number 27622, be and he hereby is disbarred, retroactive to December 9, 2016, the date of his interim suspension. His name shall be stricken from the roll of attorneys, and his license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent shall provide accountings and make restitution to the clients who are the subjects of the formal charges and/or to the Client Assistance Fund, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

SUPREME COURT OF LOUISIANA

No. 2018-B-0849

IN RE:  MICHAEL SEAN REID

ATTORNEY DISCIPLINARY PROCEEDING

**CRICHTON, J., dissents and assigns reasons:**

After considering the testimony of Mr. Reid's victims – Ms. Meehan, Mr. Pefferkorn, Ms. Savoie, Ms. Tilley, Ms. Simmons, Mr. O'Niell, Mr. Lambright, and Ms. Choate – and receiving word that respondent was "currently out of state indefinitely," the Hearing Committee recommended that respondent be permanently disbarred.  The Committee correctly concluded that respondent had not presented mitigating factors, stating that "Reid has not come forward with any evidence to support mitigation pursuant to ABA Standard 9.3" (with respect to mental disability or chemical dependency, including alcoholism or drug abuse).  The Disciplinary Board also stated that "the record lacks clear medical evidence. . . ." of a mental or physical disability, yet found "this mitigating factor should be afforded some weight."  Even in spite of the acknowledgement of a lack of medical evidence in the record, the per curiam simply adopts the inference of mitigation by its conclusion that "the record supports . . . . personal and emotional problems relating to respondent's mental health and substance abuse issues."  In my view, disciplinary proceedings are evidence-driven and thus violations of the Rules of Professional Conduct, aggravating factors, and any mitigating factors must be proven, not presumed.  There is zero evidence of mitigation other than what the ODC conceded - a previous lack of disciplinary history prior to these series of conversions.[1]

---

1 The record reflects that respondent has made no restitution to any of the victims in this case.

Furthermore, his lack of cooperation with ODC, the Hearing Committee, Disciplinary Board and this Court demonstrates his stunning indifference to this noble profession. As the Hearing Committee found, this conduct falls within Guideline 1 of the permanent disbarment guidelines and, after considering the evidence in this case, I would impose a sanction accordingly. *See In re: Hawkins*, 12-0211 (La. 5/9/12), 90 So.3d 377.