PER CURIAM.
11 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, LaShanda M. Robinson, an attorney licensed to practice law in Louisiana, but currently ineligible to practice.[1]
*514 UNDERLYING FACTS AND PROCEDURAL HISTORY
In May 2010 and November 2011, the ODC filed two separate sets of formal charges against respondent, both primarily alleging that she converted funds owed to her clients’ medical providers. Respondent answered the formal charges and admitted that she had improperly handled her client trust account; however, she asserted that such conduct was not intentional and was mitigated by her inexperience in law office management and lack of accounting skills.
The formal charges were then consolidated by order of the hearing committee chair before proceeding to a formal hearing on the merits conducted by the hearing committee in April 2012. Following its review, the disciplinary board filed in this court a single recommendation of discipline encompassing both sets of formal charges.

U10-DB-029

In December 2009, the ODC received a report of an audit of respondent’s client trust account for the period from April 2008 to June 2009. The audit report concluded that respondent converted client and third-party funds to pay her personal expenses and that she regularly commingled her own funds with client funds in the trust account. Respondent has stipulated to the following instances of trust account mismanagement as set forth in the audit report:
The Robinson matter — Respondent represented her mother-in-law, Patricia Robinson, in a personal injury matter. In April 2008, respondent settled the claim for $10,000, from which she withheld $2,793.76 owed to Agilus Health, Inc. for physical therapy services and $685.88 owed to St. Frances Cabrini Hospital for emergency room services. However, respondent failed to disburse these sums to the medical providers and instead converted a total of $3,479.14 to her own use. Patricia Robinson’s medical expenses remain unpaid to date.[2]
The Moon matter — Respondent represented Kenyatta Moon in a personal injury matter. In December 2008, respondent settled the claim for $7,000, from which she withheld $1,684.80 owed to Baton Rouge Physical Medicine and Rehabilitation (“BRPMR”) for physical therapy services. However, respondent failed to disburse these funds to the medical provider and instead converted them to her own use. In August 2010, respondent remitted the sum of $750 to BRPMR in partial satisfaction of the balance owed by Ms. Moon, but the account otherwise remains unpaid.
The Davis matter — Respondent represented Jerry Davis in a personal injury matter. In June 2008, respondent settled the claim for $9,500, from which she -withheld $3,067.33 owed to Agilus Health, Inc.; $91 owed to Central Louisiana |sImaging Center; and $508 owed to St. Frances Cabrini Hospital. However, respondent failed to disburse these sums to the medical providers and instead converted a total of $3,666.33 to her own use. Mr. Davis’s medical expenses remain unpaid to date.[3]
*515 The Deloñs Alexander matter — Respondent represented Deloris Alexander in a personal injury matter. In May 2009, respondent settled the claim for $6,223.50, from which she withheld $1,985 owed to Advantage Physical Therapy and $1,050 owed to West Feliciana Parish Hospital. However, respondent failed to disburse these sums to the medical providers and instead converted a total of $3,035 to her own use. Ms. Alexander’s medical expenses remain unpaid to date.
The Woodside matter — Respondent represented Carolyn Woodside in a personal injury matter. In May 2009, respondent settled the claim for $6,124, from which she withheld $1,894 owed to the Rathbone Clinic and $1,025.50 owed to West Felicia-na Parish Hospital. However, respondent failed to disburse these sums to the medical providers and instead converted a total of $2,919.50 to her own use. Ms. Wood-side’s medical expenses remain unpaid to date.
The Melvin Alexander matter — Respondent represented Melvin Alexander in a personal injury matter. In May 2009, respondent settled the claim for $5,500, from which she withheld $1,485 owed to Advantage Physical Therapy and $29 owed to West Feliciana Parish Hospital. However, respondent failed to disburse these sums to the medical providers and instead converted a total of $1,514 to her own use. Mr. Alexander’s medical expenses remain unpaid to date.
The Williams and McCastle matters— Respondent represented Max Williams and Don McCastle in family law matters. From Mr. Williams, respondent received an advance fee payment of $2,375, and from Mr. McCastle, |4she received an advance fee payment of $1,900. Respondent initially deposited these payments into her client trust account but then withdrew the funds before the fees were fully earned.
The ODC alleged that respondent’s conduct in 10-DB-029 violated the following provisions of the Rules of Professional Conduct: Rules 1.5(f)(3) (when the client pays the lawyer an advance deposit against fees which are to accrue in the future on an hourly or other agreed basis, the funds remain the property of the client and must be placed in the lawyer’s trust account), 1.15(a) (a lawyer shall hold property of clients or third persons that is in a lawyer’s possession in connection with a representation separate from the lawyer’s own property), 1.15(d) (a lawyer shall promptly deliver to a client or third person any funds or other property that the client or third person is entitled to receive), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). In addition, the ODC alleged that respondent violated Rule 8.1(c) (failure to cooperate with the ODC in its investigation) by failing to answer BRPMR’s December 2009 disciplinary complaint.[4]

U-DB-m

In June 2011, the ODC received a report of an audit of respondent’s client trust account for the period from August 2005 to March 2008 and from June 2009 to November 2010. The audit report concluded that respondent converted client and third-party funds to pay her personal expenses and that she regularly commingled her own *516 funds with client funds in the trust account. The report also noted that the account was overdrawn on four occasions between May and October |52010. Respondent has stipulated to the following instances of trust account mismanagement as set forth in the audit report:[5]
The Gamer matter — Respondent represented Sequence Garner in a personal injury matter. In September 2007, respondent settled the claim for $12,000, from which she withheld $3,100 owed to BRPMR for physical therapy services and $287 owed to Baton Rouge General Medical Center for emergency room sendees. However, respondent failed to disburse these sums to the medical providers and instead converted a total of $8,387 to her own use. In August 2010, respondent remitted the sum of $750 to BRPMR in partial satisfaction of the balance owed by Ms. Garner, but the account otherwise remains unpaid.
The Brandy Alexander matter — Respondent represented Brandy Alexander in a personal injury matter. In July 2009, respondent settled the claim for $6,500, from which she withheld $355.24 owed to Field Memorial Hospital; $950 owed to Central Louisiana Imaging Center; $859 owed to the Rathbone Clinic; and $235 owed to the Daniel Clinic. However, respondent failed to disburse these sums to the medical providers and instead converted a total of $2,399.24 to her own use. Ms. Alexander’s medical expenses remain unpaid to date.
The ODC alleged that respondent’s conduct in ll-DB-104 violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a) and 1.15(d).

Hearing Committee Report

As previously noted, the hearing committee conducted a hearing on the consolidated formal charges. Following the hearing, the committee issued its |fireport, in which it made factual findings consistent with the underlying facts set forth above. The committee found that respondent mismanaged her client trust account by converting $22,085.01 owed to her clients’ medical providers and by commingling personal funds with client funds in the trust account. She also failed to submit a written response to the disciplinary complaint filed by BRPMR. The committee found this conduct violated the Rules of Professional Conduct as charged in the formal charges.
The committee determined that respondent violated duties owed to her clients, the public, the legal system, and the profession. Her misconduct was not only knowing, but intentional. Respondent caused actual injury to her clients, who remain liable for the payment of their medical expenses when funds to do so have already been deducted from their settlement proceeds, and the healthcare providers, who still have not been compensated. The applicable baseline sanction in this matter is disbarment, both pursuant to the ABA’s Standards for Imposing Lawyer Sanctions and the seminal case of Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), which sets forth general guidelines for imposing discipline in a conversion case.
In aggravation, the committee found a dishonest or selfish motive and multiple offenses. The committee also noted that several overdrafts occurred in respon *517 dent’s client trust account even after the ODC had been investigating her mishandling of the account for more than a year. Further, the committee expressed disappointment that respondent did not take advantage of the many resources available to her through the bar association to assist her in correctly handling her trust account. With respect to mitigating circumstances, the committee recognized the following factors: absence of a prior disciplinary record, personal or emotional problems, full and free disclosure to the disciplinary board and a cooperative 17attitude toward the proceedings, inexperience in the practice of law (admitted 2004), character or reputation, and remorse.
Notwithstanding the mitigating factors, the committee recommended that respondent be disbarred for “the extensive rule violations committed.” The committee also recommended that respondent be required to pay restitution of the full amount of her clients’ medical expenses, plus interest, to their healthcare providers.[6]
Respondent filed an objection to the hearing committee’s report and recommendation, asserting that the committee erred in finding she failed to cooperate with the ODC. Respondent also contended that the sanction of disbarment is too harsh.

Disciplinary Board Recommendation

After reviewing these consolidated matters, the disciplinary board found that the hearing committee’s factual findings are not manifestly erroneous, as they are largely based upon respondent’s stipulations. The board also found respondent violated the Rules of Professional Conduct as alleged in the formal charges, except the board concluded respondent’s failure to file a formal written response to the BRPMR complaint was an oversight that did not rise to the level of an ethical violation. Accordingly, the board found no violation of Rule 8.1(c).
The board determined that respondent knowingly and intentionally violated duties owed to her clients. She caused actual injury to several third-party 18healthcare providers by converting more than $22,000 dedicated to payment of medical services rendered to her clients. These providers remain uncompensated for the services they provided (with the exception of the two partial payments of $750 each which BRPMR received from respondent in August 2010). Additionally, respondent’s mismanagement of her client trust account, which included commingling and the payment of personal expenses out of her trust account, created the potential for harm to her clients. According to the ABA Standards and Hinrichs, the applicable baseline sanction in this matter is disbarment.
In aggravation, the board found a dishonest or selfish motive, a pattern of misconduct, and multiple offenses. Like the committee, the board also noted the overdrafts which occurred in respondent’s client trust account even after formal *518 charges had been filed against her arising out of the mismanagement of the account. In mitigation, the -board found the following factors: absence of a prior disciplinary-record, personal or emotional problems, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, inexperience in the practice of law, character or reputation, and remorse.
Turning to the issue of an appropriate sanction, the board acknowledged that respondent’s misconduct falls into the Hinrichs disbarment category, as she knowingly converted third-party funds, the extent of the conversion is significant, and, with one minor exception, she has failed to pay restitution. However, the board concluded that the mitigating factors present in this case are substantial and warrant a downward deviation to suspension.
Based on this reasoning, the board recommended that respondent be suspended from the practice of law for three years. The board also recommended that respondent be required to make full restitution to her clients’ medical providers and that she be assessed with the costs and expenses of this matter.
| ^Although neither respondent nor the ODC filed an objection to the board’s recommendation, on October 9, 2013, we ordered briefing addressing the issue of an appropriate sanction. Both respondent and the ODC filed briefs in response to the court’s order.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57.
In this matter, the record supports a finding that respondent converted more than $22,000 owed to her clients’ medical providers and commingled personal funds with client funds in her trust account. Based on these facts, respondent has violated the Rules of Professional Conduct as found by the disciplinary board.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987).
We agree with the hearing committee that respondent’s conversion of third-party funds was intentional. The conversion clearly caused actual harm to respondent’s clients and their medical providers, and the applicable baseline sanction is disbarment.
The following aggravating factors are present: a dishonest or selfish motive, a pattern of misconduct, and multiple offenses. The following mitigating factors | Tnare supported by the record: absence of a prior disciplinary record, personal or emotional problems, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, inexperience in the practice of law at the time of the misconduct (admitted 2004), character or reputation, and remorse.
Turning to the issue of an appropriate sanction, in Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), we conducted an extensive review of the juris *519 prudence in conversion cases in order to determine the appropriate sanctions for different types of conversion. We reserved disbarment, then the most serious sanction available, for conversion cases in which one or more of the following elements are present:
[T]he lawyer acts in bad faith and intends a result inconsistent with his client’s interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings.
By contrast, we stated in Hinrichs that a three-year suspension would be appropriate in cases involving fewer aggravating factors than the disbarment cases:
In such cases the lawyer is guilty of at least a high degree of negligence in causing his client’s funds to be withdrawn or retained in violation of the disciplinary rule. He usually does not commit other fraudulent acts in connection therewith. The attorney usually benefits from the infraction but, in contrast with disbarment cases, the client may not be greatly harmed or exposed to great risk of harm. The attorney fully reimburses or pays his client the funds due without the necessity of extensive disciplinary or legal proceedings.
Nearly all of the elements supporting disbarment are present in the instant case. Respondent has acknowledged that from 2007 to 2009, she converted more than $22,000 owed to the medical providers of at least eight of her clients. These Inactions were in no way attributable to respondent’s inexperience in law office management and lack of accounting skills, as she claims, but rather were intentional and prompted by her own personal financial difficulties. Respondent clearly acted in a manner that was contrary to the best interests of her clients and caused significant harm both to the clients who are still liable for their unpaid medical expenses and to the medical providers who have been deprived of funds owed them for four to six years. Finally, with the exception of a belated payment to one medical provider totaling $1,500, which payment was made only after the extended pressure of these disciplinary proceedings, respondent has failed to make any restitution whatsoever on her clients’ behalf.
Notwithstanding these aggravating factors and what appears to be a clear case for disbarment under Hinrichs, the disciplinary board has recommended a downward deviation to a three-year suspension from the practice of law. While we recognize that there are some mitigating circumstances present in this case, we find that under the circumstances, they do not justify a deviation from the baseline sanction.
Based on this reasoning, we will reject the disciplinary board’s recommendation of a three-year suspension and instead impose disbarment, as recommended by the hearing committee. We will also order respondent to pay restitution of the full amount of her clients’ medical expenses, plus legal interest.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record and the briefs filed by the parties, it is ordered that LaShanda M. Robinson, Louisiana Bar Roll number 29402, be and she hereby is disbarred. Her name shall be stricken from the roll of attorneys and *520 her license to practice law in the State of Louisiana shall be revoked. | ,glt is further ordered that respondent shall make full restitution to her clients’ medical providers as set forth in this opinion. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. On May 31, 2013, respondent was declared ineligible to practice law for failure to comply with the mandatory continuing legal education requirements. She is also ineligible for failure to pay her bar dues and the disciplinary assessment and for failure to file a trust account disclosure form.

. The audit report indicates that Patricia Robinson’s insurer may have paid the emergency room bill to St. Frances Cabrini Hospital, but if that is the case, respondent owes the funds to Patricia Robinson or the insurance company.

. The audit report also indicates that $548 owed to Dr. Verma Rajinder was withheld from Mr. Davis’s settlement but not paid; however, respondent introduced documentary evidence at the hearing in this matter that Dr. Rajinder has been paid in full.

. The complaint primarily related to Ms. Moon’s matter but also questioned whether respondent had failed to remit medical expenses owed by her client Leroy Dukes to BRPMR. Although respondent did handle a personal injury claim for Mr. Dukes, no settlement was ever reached in the matter, and thus there is no evidence that respondent is in possession of funds in connection with that representation which her client or a third party is entitled to receive.

. The audit report also concludes that respondent converted $15,000 belonging to her client Marshae Celestine because she could not provide the auditor with any documentation to support the disbursements made on Ms. Celestine’s behalf. However, based upon evidence submitted by respondent at the hearing in this matter, the ODC has agreed that there was no conversion of Ms. Celestine's funds.

. Respondent had requested and obtained a reduction in the amounts owed by Ms. Robinson, Ms. Moon, and Ms. Garner for physical therapy services in order to facilitate the settlement of their personal injury claims, and upon disbursement of these settlements, she withheld the reduced amounts. However, when she failed to pay her clients’ medical expenses promptly, the healthcare providers withdrew their offer of a reduced payment. Therefore, the committee recommended (and we agree) that respondent should be responsible for making restitution of the full amount of the physical therapy expenses incurred by Ms. Robinson ($5,587.53), Ms. Moon ($2,808), and Ms. Gamer ($4,188), in addition to the outstanding medical expenses for her other clients subject of the formal charges. The total amount of restitution calculated in this fashion, less the two partial payments of $750 each which respondent has already made to BRPMR, is $25,589.98, plus interest.