# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #046

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **22nd day of September, 2017**, are as follows:

**PER CURIAM**:

2017-B-0525      IN RE: KENNETH TODD WALLACE
                 Upon review of the findings and recommendations of the hearing
                 committee and disciplinary board, and considering the record,
                 briefs, and oral argument, it is ordered that Kenneth Todd
                 Wallace, Louisiana Bar Roll number 25920, be and he hereby is
                 suspended from the practice of law for a period of thirty months,
                 with all but twelve months deferred.  This suspension shall be
                 retroactive to January 8, 2016, the date of respondent's interim
                 suspension.  All costs and expenses in the matter are assessed
                 against respondent in accordance with Supreme Court Rule XIX, §
                 10.1, with legal interest to commence thirty days from the date
                 of finality of this court's judgment until paid.

SUPREME COURT OF LOUISIANA

NO. 2017-B-0525

IN RE: KENNETH TODD WALLACE

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Kenneth Todd Wallace, an attorney licensed to practice law in Louisiana but currently on interim suspension pursuant to a joint petition filed by the parties in December 2015. *In re: Wallace*, 15-2305 (La. 1/8/16), 182 So. 3d 941.

**UNDERLYING FACTS**

The following facts are not in dispute, having been stipulated to by the parties.

By way of background, respondent joined the law firm of Liskow & Lewis ("the firm") as an associate attorney in 1998. After his promotion to shareholder in 2005, respondent served as the firm's hiring partner and head of recruiting. He also chaired the firm's diversity committee as the firm's first minority recruiting and retention partner. In 2012, respondent was elected to the firm's board of directors and served as the board's junior director through April 2015.

As a member of the firm, respondent generally billed on an hourly basis but sometimes worked on cases on a contingency basis. The firm's policy set hourly billing targets for shareholders at 1,800 billable hours annually. These billing targets were one of several factors taken into consideration for annual salary increases, discretionary bonuses, and promotion within the firm.

In November 2015, the firm's compensation committee noted that respondent's "fee bill credit," which is a measure of collections attributable to an attorney's recorded billable time, seemed low. Therefore, the committee inquired into the status of certain files for which respondent had recorded significant billable time. This inquiry led to the discovery that, between 2012 and 2015, respondent had recorded billing entries on a contingency fee case that had been dismissed in October 2012. Because this particular case was an unsuccessful contingency fee matter, the falsely billed hours were not billed to the client or submitted to any court for approval. The committee found two other files containing entries that had not been billed to clients.

The firm presented these preliminary findings to respondent on November 9, 2015. At that meeting, respondent acknowledged and apologized for his misconduct and assured the firm that his actions had not impacted any of the firm's clients. Respondent informed the firm about other files in which he had recorded false or inflated time or in which he created false receivables that were never billed to clients. With respondent's assistance and cooperation, the firm conducted a full investigation in order to assess whether his conduct had impacted any of the firm's clients. Upon completion of the investigation, the firm confirmed that respondent's conduct did not adversely impact any clients.

The firm identified seven files containing, in part, false entries or receivables. Regarding the contingency fee file that was dismissed in October 2012, the firm discovered false entries totaling 52.25 hours in 2012, false entries totaling 385 hours in 2013, false entries totaling 270 hours in 2014, and false entries totaling 376 hours in 2015. In three other cases, respondent recorded false and inflated entries totaling $91,544.50; he then prepared and reported the bills to the firm's accounting office, but the bills were never sent to the clients. In three additional cases, respondent recorded false and inflated entries that were written off without the preparation of

2

bills and were not billed to the clients. In total, respondent submitted 428 entries that the firm classified as "certainly false" and an additional 220 entries that the firm classified as "reasonably certain" to be "false or inflated."

Between 2012 and 2014, respondent received merit bonuses totaling $85,000. The firm concluded that respondent would most likely have received some or all of these merit bonuses even without the false inflation of his billable hours.

Respondent indicated he engaged in this misconduct because he was concerned that his accurate billable hours, when coupled with an insufficient book of business, were not commensurate with his leadership position in the firm. He denied that he engaged in the misconduct out of a desire for discretionary bonuses or any other monetary gain.

On November 22, 2015, respondent voluntarily submitted his letter of resignation to the firm, effective November 30, 2015. He also voluntarily renounced his entire termination bonus, which totaled approximately $85,000, owed to him for his share of the firm's accounts receivable. The firm determined that this renunciation likely exceeded any losses the firm incurred as a result of respondent's conduct.

Respondent self-reported his misconduct to the ODC on November 25, 2015. The firm reported its findings to the ODC on December 4, 2015.

## DISCIPLINARY PROCEEDINGS

In March 2016, the ODC filed formal charges against respondent, alleging that his conduct violated Rules 8.4(a) (violation of the Rules of Professional Conduct) and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct. Respondent, through counsel, answered the formal charges and admitted his misconduct but asserted that numerous mitigating factors were present.

3

Prior to a formal hearing in this matter, respondent and the ODC filed a joint stipulation of facts, wherein respondent admitted to the facts as set forth above. Respondent also stipulated to violating the Rules of Professional Conduct as alleged in the formal charges. The parties further stipulated to the presence of several aggravating and mitigating factors. In aggravation, they stipulated to a dishonest or selfish motive, a pattern of misconduct, and substantial experience in the practice of law (admitted 1998). In mitigation, they stipulated to the absence of a prior disciplinary record, timely good faith effort to make restitution or to rectify the consequences of the misconduct, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, and remorse.

*Formal Hearing*

The hearing committee conducted a hearing in April 2016. The ODC introduced documentary evidence and called four witnesses to testify before the committee. Respondent introduced documentary evidence, including numerous character letters. He also testified on his own behalf and on cross-examination by the ODC.

*Hearing Committee Report*

After considering the evidence and testimony presented at the hearing, the hearing committee accepted the joint stipulations agreed to by the parties. The committee also made additional factual findings as follows:

Respondent testified he engaged in misconduct due to his concerns that his accurate billable hours were not commensurate with his leadership position within the firm. As a member of the firm's board of directors, respondent saw firsthand, and on a monthly basis, the extraordinary billable hours and business dollars

4

generated by key leaders of the firm. When his practice began to decline, respondent gave in to his own internal pressures and began to submit false time on a dismissed contingency fee matter, and eventually other matters, in an effort to make himself look better on paper each month. The committee found respondent's testimony to be credible.

Robert Angelico, the firm's managing partner, testified he believes respondent's motivation was his concern that his billable hours were not commensurate with his leadership position and not any desire for bonuses. Respondent expressed his anxiety about not having much of his own client base to James Brown, the chair of the firm's commercial litigation section. Like Mr. Angelico, Mr. Brown did not believe a desire for bonus money was what drove respondent to submit false billable hours.

Respondent received a discretionary bonus from the firm's compensation committee for 2012, 2013, and 2014. Scott Perkins, the firm's executive director, testified that even when he subtracted all potentially false time entries, respondent still met and exceeded his billing targets in each of these years. The testimony confirmed that respondent dedicated an extraordinary amount of hours annually during the relevant time period as a member of the firm's board of directors, as board secretary, as chair of the diversity committee, as a member of the hiring committee, as a firm liaison to Judge Zainey's homeless program, and as chair of a number of ad hoc committees appointed by the firm's president. Mr. Brown testified that respondent's extraordinary firm involvement and leadership was sufficient to warrant a merit bonus. He further confirmed that respondent's extraordinary efforts in firm management alone would have merited him a bonus. While the testimony of Mr. Brown and Mr. Angelico supports the conclusion that respondent would have been eligible for merit bonuses, the testimony also supports the conclusion that not

5

all of the merit bonuses would have been paid to respondent had his hours been accurately recorded.

Based on these findings, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges and stipulated to by the parties. The committee then determined respondent intentionally violated duties owed to the public and the legal profession. There is no evidence to indicate that any clients were harmed by respondent's misconduct. However, his misconduct created significant potential harm to the firm. The committee agreed with the aggravating and mitigating factors stipulated to by the parties. In further mitigation, the committee noted respondent also suffered the imposition of other sanctions and penalties as he endured the loss of his job, the loss of additional income because he was unable to secure other employment for several months, and the loss of several community leadership positions.

After further considering this court's prior jurisprudence addressing similar misconduct, the committee recommended respondent be suspended from the practice of law for one year and one day, retroactive to January 8, 2016, the date of his interim suspension.

The ODC filed an objection to the committee's recommendation, arguing that a suspension from the practice of law for thirty months appears appropriate.

*Disciplinary Board Recommendation*

After review, the disciplinary board determined that the hearing committee's factual findings are supported by the record and are not manifestly erroneous. The board also determined that the committee correctly concluded respondent violated Rules 8.4(a) and 8.4(c) of the Rules of Professional Conduct as stipulated to by the parties.

6

The board determined respondent knowingly, if not intentionally, violated duties owed to the public and the legal profession. Respondent caused no actual harm to any clients, and the evidence indicates that the firm suffered little to no actual harm. After reviewing the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined the applicable baseline sanction ranges from suspension to disbarment. The board adopted the aggravating and mitigating factors found by the committee.

After reviewing this court's prior jurisprudence addressing similar misconduct, and determining that it would be purely punitive to require respondent to undergo the reinstatement process, the board recommended he be suspended from the practice of law for one year, retroactive to the date of his interim suspension. Two board members dissented and would recommend a period of suspension that would require respondent to apply for reinstatement.

The ODC filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

**DISCUSSION**

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

7

Respondent has stipulated that he engaged in professional misconduct by recording false and inflated billable hours. In doing so, respondent has violated the Rules of Professional Conduct as alleged in the formal charges and as set forth in the joint stipulation submitted by the parties. Therefore, the sole question presented for the court's consideration is the appropriate sanction for this misconduct.

In determining the sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

The record supports a finding that respondent intentionally violated duties owed to the public and the legal profession. His actions had the potential to cause significant harm, however, there is no evidence that any client harm actually occurred. Likewise, it appears little or no actual harm was suffered by respondent's law firm. The record supports the aggravating and mitigating factors as stipulated to by the parties.

Turning to the issue of an appropriate sanction, we find that respondent's conduct involved a long and repetitive pattern of dishonesty. As such, the lengthy thirty-month suspension sought by the ODC is clearly appropriate. However, there are significant mitigating circumstances present, including respondent's voluntary resignation from the firm and his renunciation of his entire termination bonus. These factors, coupled with the lack of harm to respondent's clients and the firm, justify the deferral of all but twelve months of the suspension.

Accordingly, under the circumstances of this case, we will suspend respondent from the practice of law for thirty months, with all but twelve months deferred, retroactive to January 8, 2016, the date of respondent's interim suspension.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Kenneth Todd Wallace, Louisiana Bar Roll number 25920, be and he hereby is suspended from the practice of law for a period of thirty months, with all but twelve months deferred. This suspension shall be retroactive to January 8, 2016, the date of respondent's interim suspension. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.