PER CURIAM
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Mitchel M. Evans II, an attorney licensed to practice law in Louisiana, but currently suspended from practice.
PRIOR DISCIPLINARY HISTORY
Before we address the current charges, we find it helpful to review respondent's prior disciplinary history. Respondent was admitted to the practice of law in Louisiana in 1989. In 1997, respondent received an admonition for taking a recorded statement from a criminal defendant despite the defendant's attorney prohibiting same.
In 2016, we considered allegations against respondent of misconduct that occurred between 2005 and 2012. We ultimately determined that respondent neglected numerous legal matters, failed to communicate with numerous clients, failed to provide competent representation, failed to refund unearned fees, failed to provide accountings to clients, failed to reduce contingency fee agreements to writing, failed to properly supervise non-lawyer assistants, failed to keep one client's information confidential, and failed to cooperate with the ODC in two investigations. For this misconduct, we suspended respondent from the practice of law for three years, with two years deferred, followed by two years of supervised probation with conditions. In re: Evans , 16-1115 (La. 12/6/16), 218 So.3d 1015 (" Evans I "). Respondent has not sought reinstatement from this suspension; thus, he remains suspended from the practice of law.
Against this backdrop, we now turn to a consideration of the misconduct at issue in the instant proceeding.
UNDERLYING FACTS
By way of background, the mother of James McCoy's child filed a custody case in Louisiana in an attempt to obtain sole custody of the child. The child's mother also moved for a restraining order against James' wife, Rosalba.
In September 2015, the McCoys hired respondent to represent them in the case, paying him $1,200 for the representation. Specifically, the McCoys wanted respondent to get the case dismissed, claiming Louisiana lacked jurisdiction over the matter. The McCoys also wanted the restraining order dissolved because it jeopardized Rosalba's security clearance with the military. Furthermore, as both James and Rosalba were in the military and stationed outside of Louisiana at the time, they discussed with respondent appearing via SKYPE at the upcoming hearing to dismiss the case.
Respondent appeared in court on the McCoys' behalf on September 10, 2015 and entered into a consent judgment with opposing counsel. Despite the McCoys' wishes, the consent judgment gave sole custody of the child to the mother and maintained the restraining order. Even though respondent consented to this judgment, he apparently informed the McCoys that the judge ordered the terms of the judgment. It was not until the McCoys hired an attorney in Florida, where they were living at the time, that they learned respondent had consented to the terms of the judgment.
The McCoys provided the ODC with copies of e-mails between themselves and *1270 respondent, in which they clearly stated their wishes regarding the scope of the representation. Respondent admitted that he agreed to the consent judgment without speaking to the McCoys but alleged his actions were appropriate since the McCoys waived their appearance at the hearing. The McCoys disputed waiving their appearance and provided documentation indicating they would appear at the hearing via SKYPE. The McCoys also indicated they were happy to drive to Louisiana, if necessary, but respondent assured them they could appear via SKYPE.
The McCoys requested a refund of the unearned portion of the fee they paid respondent. However, respondent refused to refund any portion of the fee. Because of the consent judgment respondent entered into without the McCoys' knowledge or permission, Rosalba has lost her security clearance with the military and James has been denied visitation he previously enjoyed with his child.
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a) (failure to provide competent representation to a client), 1.2(a) (scope of the representation), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(f)(5) (failure to refund an unearned fee), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
DISCIPLINARY PROCEEDINGS
In January 2017, the ODC filed formal charges against respondent. Respondent answered the formal charges, essentially denying any misconduct. The matter then proceeded to a formal hearing on the merits.
Hearing Committee Report
After considering the testimony and evidence presented at the hearing, the hearing committee found that Rosalba and James testified consistent with the formal charges. They both testified that they sought respondent's assistance in having the case dismissed and the restraining order dissolved. The McCoys told respondent that they did not believe Louisiana had jurisdiction and that they did not want any restraining order entered. The committee also found that, in his testimony, respondent acknowledged the McCoys voiced these concerns to him. Respondent further acknowledged he entered into a consent judgment that was inconsistent with his clients' wishes. Respondent's justification for the consent judgment was his belief that he was acting in his clients' best interest and the consent judgment would allow the McCoys to have the matter reopened in another jurisdiction. Finally, while respondent testified that he informed the McCoys of the consent judgment the night after it was entered, he readily admitted that he did not discuss same with the McCoys beforehand or have their authority to enter into it.
Based on these factual findings, the committee determined that respondent violated Rules 1.1(a), 1.2(a), 1.4, 1.5(f)(5), and 8.4(a) of the Rules of Professional Conduct. The committee determined that respondent did not violate Rules 1.3, 8.4(c), or 8.4(d) because respondent informed the McCoys of his actions and reasoning shortly after the consent judgment was entered and his actions were not prejudicial to the administration of justice.
The committee then determined that respondent intentionally violated duties owed to his clients, causing actual harm to the McCoys. After considering the ABA's Standard for Imposing Lawyer Sanctions , *1271 the committee determined the baseline sanction is suspension.
Regarding an appropriate sanction, the committee found that, if the instant charges had been included in Evans I , the sanction ordered in Evans I would have been the same.[1] Therefore, the committee felt no additional discipline was needed because the three-year suspension, with two years deferred, followed by two years of supervised probation with conditions, as imposed in Evans I , is sufficient punishment.
Accordingly, the committee recommended no additional discipline than that which was imposed by us in Evans I . However, the committee did recommend respondent be ordered to refund the entire $1,200 fee to the McCoys.
The ODC objected to the hearing committee's report, arguing the committee erred in not finding that respondent violated Rules 8.4(c) and 8.4(d) of the Rules of Professional Conduct. The ODC also objected to the committee's failure to recommend the imposition of additional discipline upon respondent.
Disciplinary Board Recommendation
After review, the disciplinary board determined that the hearing committee's factual findings are not manifestly erroneous and are supported by the record. The board agreed with the committee's conclusion that respondent violated Rules 1.1(a), 1.2(a), 1.4, 1.5(f)(5), and 8.4(a) of the Rules of Professional Conduct. However, the board disagreed with the committee that respondent did not violate Rules 8.4(c) and 8.4(d). With respect to Rule 8.4(c), the board determined that respondent lied to Rosalba about how the ruling in the consent judgment came about. The board noted that Rosalba testified respondent informed her the judge in the matter made the ruling on the custody and restraining order issues. However, several months later, in January 2016, Rosalba learned respondent had entered into a consent judgment with opposing counsel regarding those issues. Thus, the board found that respondent violated Rule 8.4(c). With respect to Rule 8.4(d), the board determined that respondent consented to issues to which his clients did not want him to consent. Accordingly, the board found that respondent violated Rule 8.4(d).
The board then determined that respondent intentionally violated duties owed to his clients, causing the McCoys actual harm. After considering the ABA's Standards for Imposing Lawyer Sanctions , the board determined the baseline sanction is suspension.
In aggravation, the board found the following: a prior disciplinary record, a dishonest or selfish motive, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law (admitted 1989). In mitigation, the board noted only respondent's cooperative attitude toward the proceedings.
After further considering prior jurisprudence addressing similar misconduct, the board recommended respondent be suspended from the practice of law for one year and one day. The board also recommended respondent be ordered to provide the McCoys with a refund.
*1272 One board member dissented and would find that respondent did not violate Rule 8.4(c). She reasoned that the committee made no factual finding that respondent lied to the McCoys and that the board majority did not determine the committee's failure to find such was manifestly erroneous.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5 (B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks , 09-1212 (La. 10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield , 96-1401 (La. 11/25/96), 683 So.2d 714 ; In re: Pardue , 93-2865 (La. 3/11/94), 633 So.2d 150.
In this matter, the record supports a finding that respondent failed to provide competent representation to his clients, took action contradictory to his clients' wishes, failed to communicate with his clients, failed to refund an unearned fee, and engaged in conduct prejudicial to the administration of justice. As such, he has violated the Rules of Professional Conduct as found by the disciplinary board, with the exception of Rule 8.4(c).
Regarding Rule 8.4(c), we agree with the assessment of the dissenting board member. The McCoys and respondent provided conflicting testimony regarding what respondent told his clients about how the consent judgment came to be. Given that the hearing committee did not make a specific factual finding that respondent lied to the McCoys and the disciplinary found no manifest error in the committee's factual findings, we cannot say the ODC proved a Rule 8.4(c) violation by clear and convincing evidence.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis , 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington , 459 So.2d 520 (La. 1984).
Respondent's intentional misconduct violated duties owed to his clients and caused the McCoys actual harm. We agree with the committee and the board that the baseline sanction is suspension.
Aggravating factors include a prior disciplinary record, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, substantial experience in the practice of law, and indifference to making restitution. As the board pointed out, the only mitigating factor is respondent's cooperative attitude toward the proceedings.
In light of the above, especially respondent's intentional failure to abide by his clients' wishes, the harm this intentional conduct caused the McCoys, and the numerous aggravating factors present, the best way to protect the public is to require respondent to apply for reinstatement and obtain our permission before being allowed *1273 to return to the practice of law. As such, we find the board's recommended sanction is appropriate.
Accordingly, we will adopt the board's recommendation and suspend respondent from the practice of law for one year and one day. We will also order him to refund the $1,200 fee to the McCoys.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Mitchel M. Evans II, Louisiana Bar Roll number 19322, be and he hereby is suspended from the practice of law for a period of one year and one day. It is further ordered that respondent shall refund the $1,200 fee, plus legal interest, to James and Rosalba McCoy. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

Presumably, the committee is applying the analysis of Louisiana State Bar Ass'n v. Chatelain , 573 So.2d 470 (La. 1991). In Chatelain , we observed that when the underlying conduct occurs within the same period as the misconduct forming the basis of a previous disciplinary matter, the discipline imposed should be determined as if both proceedings were before the court simultaneously. However, in the instant matter, respondent's misconduct subject of Evans I occurred between 2005 and 2012, and his misconduct in the McCoy matter did not occur until September 2015. Therefore, Chatelain is not applicable.