# Supreme Court of Louisiana

The Opinions handed down on the **3rd day of April, 2020** are as follows:

**PER CURIAM:**

2019-B-01479          IN RE: GEORGE A. FLOURNOY

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that George A. Flournoy, Louisiana Bar Roll number 5620, be and he hereby is suspended from the practice of law for a period of one year. It is further ordered that all but thirty days of the suspension shall be deferred. Following the active portion of the suspension, respondent shall be placed on unsupervised probation for a period of one year. The probationary period shall commence from the date respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. It is further ordered that all investigative costs related to Counts I and III of the formal charges and two-thirds of the total litigation expenses are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

Retired Judge James H. Boddie, Jr., appointed Justice ad hoc, sitting for Justice Marcus R. Clark.

Johnson, C.J., concurs in part, dissents in part, and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2019-B-1479

IN RE: GEORGE A. FLOURNOY

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM[*]

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, George A. Flournoy, an attorney licensed to practice law in Louisiana.

**PRIOR DISCIPLINARY HISTORY**

Before we address the current charges, we find it helpful to review respondent's prior disciplinary history. Respondent was admitted to the practice of law in Louisiana in 1974. In 2004, this court accepted a joint petition for consent discipline and publicly reprimanded respondent for failing to protect the interests of third-party medical providers in settlement funds he received on behalf of a client. *In re: Flournoy*, 04-0015 (La. 2/13/04), 865 So. 2d 708.

Against this backdrop, we now turn to a consideration of the misconduct at issue in the present proceeding.

**UNDERLYING FACTS**

*Count I*

In March 2004, Tammy DuBois was injured in the course and scope of her employment with Cubic Applications, Inc. ("Cubic"). Ms. DuBois subsequently

---

[*] Retired Judge James Boddie Jr., appointed Justice ad hoc, sitting for Justice Marcus R. Clark.

retained respondent to represent her in a workers' compensation claim and a personal injury matter arising out of the incident.

In February 2007, respondent negotiated a partial settlement in the workers' compensation matter of $7,000 in penalties and $6,000 in attorney's fees, for a total of $13,000. In April 2007, Cubic's counsel sent respondent a $13,000 check and a letter requesting that Ms. DuBois execute and return an Agreement and Partial Release of Claims. Ms. DuBois executed the form before a notary and two witnesses, and respondent provided Ms. DuBois with a settlement statement accounting for the disbursement of the $13,000 partial settlement.

On April 12, 2007, the workers' compensation judge rendered judgment in favor of Ms. DuBois in the amount of $3,717.95. On June 7, 2007, Cubic's counsel sent respondent a $3,717.95 check. She also enclosed a Satisfaction of Judgment which she requested that Ms. DuBois execute and return. On June 8, 2007, respondent's legal secretary, Mary White (now Attenhofer), signed Ms. DuBois' name to the Satisfaction of Judgment without the consent of Ms. DuBois. Ms. White also placed respondent's signature on the document, indicating his approval as to form and content. Ms. White notarized the Satisfaction of Judgment and returned it to Cubic's counsel.

In November 2007, Ms. DuBois filed a complaint against respondent with the ODC. In his response to the complaint, filed in December 2007, respondent provided false information concerning the Satisfaction of Judgment. Respondent initially stated that Ms. DuBois signed both the Agreement and Partial Release of Claims and the Satisfaction of Judgment in April 2007, when she came to his office to pick up her settlement check. At that time, respondent suggested, Ms. DuBois left the date blank on the Satisfaction of Judgment, and when he finally received the $3,717.95 payment, Ms. White filled in the date of June 8, 2007 and mailed the form to opposing counsel. However, the Satisfaction of Judgment was not in respondent's

2

possession in April 2007, as Cubic's counsel did not mail the form to respondent until June 7, 2007. Moreover, Ms. DuBois was out of state from June 5, 2007 to June 9, 2007, and therefore could not have signed the Satisfaction of Judgment on June 8, 2007.

In April 2010, the ODC took respondent's sworn statement, during which he acknowledged that Ms. DuBois apparently did not sign the Satisfaction of Judgment. In his response to the formal charges, filed in January 2017, respondent admitted that he told Ms. White to sign his name and Ms. DuBois' name to the Satisfaction of Judgment. He explained that he did so because the $3,717.95 check which accompanied the Satisfaction of Judgment was a reimbursement to his law firm for out-of-pocket costs and expenses in Ms. DuBois' case. Respondent stated that he had previously explained to Ms. DuBois that he would be receiving this check and that he would apply it to reduce her unpaid expenses on the firm's ledger, and she understood and was in agreement. He further stated that his initial response to the complaint, in which he indicated that Ms. DuBois had signed the Satisfaction of Judgment, was incorrect because he had not reviewed Ms. DuBois' file when he prepared his response. Respondent maintained that although his response was "sloppy and careless," there was no intent to mislead on his part.

The ODC alleges that respondent's conduct as set forth above violates the following provisions of the Rules of Professional Conduct: Rules 5.3 (responsibilities regarding nonlawyer assistance), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

*Count II*

Donna Tyson was injured in an automobile accident on January 23, 2003, while in the course and scope of her employment as a licensed physical therapist for

3

Thompson Home Health ("Thompson"). Ms. Tyson thereafter retained respondent to represent her in a claim against Thompson for workers' compensation benefits and payment of medical expenses. Attorney Eric LaFleur represented Thompson.

Ms. Tyson received benefits for a time, but on March 17, 2004, she filed a disputed claim for compensation asking for medical benefits, penalties, and attorney's fees. On July 19, 2005, respondent sent Eric LaFleur a letter "confirm[ing] our agreed upon compromise settlement as follows - $4,500.00 in penalties, $4,000.00 in attorney fees and $1,260.00 in SEB." Thereafter, on September 1, 2005, respondent and Eric LaFleur filed a Joint Petition for Approval of Compromise and Settlement Agreement with the Office of Workers' Compensation. In this pleading, which is signed by both counsel as well as Ms. Tyson, the parties seek approval of a $9,760 lump sum settlement. The workers' compensation judge approved the joint compromise and settlement agreement on September 2, 2005. Further pursuant to the September 2, 2005 order, respondent was approved to collect an attorney's fee at the statutory rate (20%) set forth under La. R.S. 23:1143, such that his fee in connection with the $9,760 settlement would amount to $1,952. However, on September 6, 2005, respondent collected an attorney's fee of $4,000.

In May 2008, attorney Ward LaFleur filed a complaint against respondent with the ODC.[1] According to the complaint, the $9,760 settlement was a lump sum settlement, and pursuant to La. R.S. 23:1143, respondent's fee should not have exceeded 20%. In his response to the complaint, respondent argued that the settlement was not a lump sum settlement. He maintained that the 20% fee limitation did not apply to the portion of the settlement negotiated for attorney's fees pursuant to La. R.S. 23:1201(F). Therefore, respondent maintained that the fee he received,

---

[1] Eric LaFleur and Ward LaFleur are brothers and law partners.

4

which fee was confirmed by letter to Eric LaFleur and agreed to by Ms. Tyson, was not excessive.

The ODC alleges that respondent's conduct as set forth above violates Rule 1.5(a) (a lawyer shall not make an agreement for, charge, or collect an unreasonable fee) of the Rules of Professional Conduct.

*Count III*

In January 2009, Rubin and Sheila Webster retained respondent to represent them in a personal injury matter arising out of an automobile accident that occurred on December 29, 2008 in Evangeline Parish. In May 2009, respondent filed separate suits on behalf of the Websters. The two suits were consolidated.

By letter dated May 25, 2010, the Websters terminated respondent's representation and instructed him to forward their files to their new attorney, Paul Cox. On June 1, 2010, respondent intervened in the Websters' suits to preserve his claim for fees. The trial court granted the Petition of Intervention on June 2, 2010. On June 16, 2010, respondent filed a Motion to Withdraw as Counsel. On June 22, 2010, the trial court granted Mr. Cox's Motion to Enroll as the attorney of record for the Websters.

Despite having been terminated, respondent noticed the deposition of a fact witness for November 1, 2010. In response, on November 2, 2010, Mr. Cox filed a pleading entitled "Motion to Quash Deposition and Prevent Intervener from Attempting to Prosecute This Case." The trial court granted the motion and quashed the deposition set by respondent; ordered respondent not to advance or participate in any motions or depositions, or participate in the trial of the matter, or prosecute the case in any way now or in the future; and set a hearing on December 6, 2010 for respondent to show cause why these orders should not be upheld.

Meanwhile, Mr. Cox had noticed the deposition of the investigating state trooper for December 8, 2010. On December 7, 2010, respondent filed a Motion to Quash the deposition. The trial court denied respondent's motion.

Also on December 7, 2010, respondent filed two separate sets of interrogatories propounded to plaintiffs (his former clients) and defendants. On December 8, 2010, respondent submitted a supplemental interrogatory to defendants and requests for production of documents. On December 10, 2010, respondent wrote a letter to the trial judge requesting that a pre-trial order be issued.

On December 14, 2010, the trial court issued reasons for judgment following the show cause hearing that took place on December 6, 2010. He stated, "It is clear that [respondent's] interest in this matter is no more than a privilege which guaranties [sic] to him a reasonable fee for the services he rendered until he was terminated and is guaranteed the repayment of the expenses he has expended on behalf of the Websters. He is therefore ordered to remove himself from participating in any way in the prosecution of this case on behalf of the Websters."

On December 16, 2010, respondent filed into the record a motion and order to schedule a pre-trial conference. On December 21, 2010, respondent noticed the deposition of a fact witness for January 12, 2011. The personal injury claims of Rubin and Sheila Webster were settled at mediation on December 22, 2010.

In January 2011, the Websters filed a complaint against respondent with the ODC. In response to the complaint, respondent asserted that he was aware of no legal authority which precludes an intervener from participating in discovery depositions, submitting interrogatories, preparing for trial, and the like. Furthermore, he contended that in this case, there was "concern for adequate protection of my fee interests and expenses" in the manner in which plaintiffs' new counsel was handling the case; therefore, he was simply ensuring that "all necessary steps had been taken to prove liability on defendants."

6

The ODC alleges that respondent's conduct as set forth above violates Rules 1.16(a) (a lawyer shall withdraw from the representation of a client if the lawyer is discharged), 3.4(c) (a lawyer shall not knowingly disobey an obligation under the rules of a tribunal), 8.4(a), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.[2]

## DISCIPLINARY PROCEEDINGS

The ODC requested permission to file formal charges against respondent in November 2011. Permission was granted by order of a hearing committee in January 2012. In November 2016, the ODC filed formal charges against respondent. Respondent answered the formal charges and denied any misconduct.

### *Formal Hearing*

Upon the filing of respondent's answer to the formal charges, this matter was set for hearing and then continued on several occasions. The matter finally proceeded to a hearing conducted by the hearing committee on July 11, 2018. The following witnesses testified in person before the hearing committee: Mary White, Tammy DuBois, and Ward LaFleur. Eric LaFleur was not called to testify at the hearing. Respondent testified on his own behalf and on cross-examination by the ODC.

### *Hearing Committee Report*

Based upon the evidence and testimony presented at the hearing, the hearing committee made the following findings of fact:

---

[2] As originally filed, the formal charges in Count III also alleged that respondent violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client) and 1.4 (failure to communicate with a client) of the Rules of Professional Conduct. These violations were dismissed by the ODC at the formal hearing; accordingly, they will not be discussed further in this opinion.

7

Count I – Respondent and Ms. White both admitted that respondent instructed Ms. White to sign a client's name and respondent's name to a satisfaction of judgment and then notarize the same document. Respondent and Ms. White testified that it was routine practice to sign the client's name to the back of checks and other matters as a convenience to the client. Ms. DuBois testified that she never gave permission for her name to be signed for her. The satisfaction of judgment was set up as an authentic act requiring the signatures to be in front of a notary and two witnesses. Respondent admitted that early in the investigation he erroneously responded to the complaint with an incorrect statement in December 2007, but this was corrected in April 2010. As the incorrect statement was made approximately six months before the complaint was filed in Count II, there is no indication that the false statement impeded the investigation into respondent. There was no testimony that the admitted conduct harmed anyone. When asked if he believed that the actions directed by him to his staff constituted a violation of the Rules, respondent's reply was that he did not believe it was a violation. The committee found this shows a lack of remorse and understanding by respondent that he has violated the Rules of Professional Conduct.

Count II – Respondent readily admitted that the attorney's fees he took in the Tyson matter were for a workers' compensation claim and were in excess of 20% of the amounts recovered; however, he claimed that the fees were La. R.S. 23:1201 fees, which could be more than 20%. The committee found it is unnecessary to determine what type of fees were involved in this matter. Rather, because of the specific language used in the joint petition for approval of compromise and settlement agreement, which was signed by respondent, the only legally allowed award for attorney's fees was 20% of the $9,760 award. The petition clearly states that the settlement is for a lump sum covering all matters and does not break the settlement down. As such, all claims, including those for attorney's fees, were

compromised for the lump sum. The committee did not find that Ms. Tyson was due reimbursement of the excessive fee, however, given that more than thirteen years has elapsed since the wrongful payment and she did not file a disciplinary complaint.

Count III – The committee found that respondent had successfully been granted intervener status by the trial court, thus becoming an independent party to the litigation. It is at least as possible as not that respondent was protecting his contractual rights as attempting to prosecute his former clients' cases. The testimony of the Websters' new counsel made clear that none of respondent's actions retarded or ultimately harmed the resolution of the cases.

Based on these findings, the committee determined that respondent violated Rules 5.3, 8.4(a), and 8.4(c) in Count I, and Rule 1.5(a) in Count II. The committee found no misconduct by respondent in Count III.

The committee determined that respondent violated duties owed to a client, the legal system, and the profession. He acted negligently in taking an unreasonable fee, which caused actual harm. He acted knowingly in failing to adequately supervise his legal assistant and in corrupting the signing of an authentic act. This could have led to significant harm, but fortunately no such harm occurred. Considering the ABA's *Standards for Imposing Lawyer Sanctions*, the applicable baseline sanction is suspension.

In mitigation, the committee recognized the following factors: absence of a prior disciplinary record, delay in the disciplinary proceedings, and absence of a selfish motive. The committee also noted in mitigation that there was "no significant harm to the public." In aggravation, the committee recognized the following factors: substantial experience in the practice of law, multiple offenses, vulnerability of the victims, and submission of a false statement to the ODC. The committee further observed that respondent has demonstrated a lack of remorse and understanding that he has violated the Rules of Professional Conduct.

9

In conclusion, the committee commented that the root of respondent's misconduct is a "fundamental misunderstanding of the best practices of Law Office Management." Accordingly, the committee recommended that respondent be suspended from the practice of law for eighteen months, with all but sixty days deferred, followed by a two-year period of supervised probation or completion of thirty hours of continuing legal education in the area of law office management, whichever occurs first.

The ODC filed an objection to the hearing committee's report. The ODC objected to the committee's determination that respondent should not have to pay restitution to Ms. Tyson and to the leniency of the sanction recommended by the committee. In its pre-argument brief filed with the disciplinary board, the ODC also objected to the committee's finding that it did not prove a violation of Rule 1.16(a) as alleged in Count III of the formal charges. In his pre-argument brief, respondent maintained that the committee erred in some of its factual findings and legal conclusions.

*Disciplinary Board Recommendation*

After reviewing this matter, the disciplinary board determined that the hearing committee's factual findings are not manifestly erroneous. As to Count II, the board made additional findings of fact relating to the background leading up to Ms. Tyson's settlement, the basis for the fee taken by respondent, and the circumstances under which the complaint was filed against respondent.

The board also determined that the committee correctly found respondent violated the Rules of Professional Conduct as charged. In Count I, respondent admitted that he instructed his secretary to sign Ms. DuBois' name to the Satisfaction of Judgment. This was compounded by the secretary's having the act witnessed by two persons and then notarizing the pleading. These circumstances demonstrated

that respondent failed to ensure his nonlawyer employee's conduct was compatible with respondent's professional obligations, in violation of Rule 5.3, and engaged in conduct involving a misrepresentation, in violation of Rule 8.4(c). The violations of Rules 5.3 and 8.4(c) establish the derivative violation of Rule 8.4(a). In his initial answer to the complaint submitted to the ODC, respondent also provided inaccurate information regarding Ms. DuBois' signing of the Satisfaction of Judgment and the circumstances involved. He later corrected this statement during his sworn statement and admitted that he instructed his secretary to sign Ms. DuBois' name. He explained that at the time he made his initial response, he was out of town and was not able to review the whole file and wrote what he thought had happened. While respondent should have been more diligent in reviewing the facts before responding to the complaint, this conduct, which was later corrected, on its own is not so egregious as to constitute a violation of Rule 8.4(c).

As to Count II, the board found that although the evidence reflects that the settlement agreement reached by respondent and Eric LaFleur contemplated a $4,000 attorney's fee, and Ms. Tyson was completely aware of and agreed to that fee, the settlement breakdown was not properly memorialized in the settlement pleadings and approved by the workers' compensation judge. Consequently, there was no order specifically awarding respondent $4,000 in attorney's fees. The only approved attorney's fee was "at the applicable rate set forth under the Louisiana Workers' Compensation Act, LSA-R.S. 23:1143." La. R.S. 23:1143(B)(1) provides that "[a]n attorney may withhold, as proposed attorney fees, a sum not to exceed twenty percent of all amounts recovered in his trust account which funds shall remain the property of the claimant, pending approval of such fees by the workers' compensation judge." Therefore, the fee charged by respondent – which amounted to approximately 40% of the total settlement amount – was excessive and in violation of Rule 1.5(a).

Finally, in Count III, for the reasons set forth by the committee, the board found the ODC did not meet its burden of proving by clear and convincing evidence that respondent violated the Rules of Professional Conduct.

The board determined that respondent violated duties owed to his client, the legal system, and the legal profession in Count I. He acted knowingly in allowing his secretary to sign his client's name on the Satisfaction of Judgment, which signature was notarized by the secretary and the judgment then filed into the court record. However, the evidence shows that no harm was caused by this misconduct. The judgment was satisfied by the payment forwarded by the defendant to respondent with the unsigned Satisfaction of Judgment and the client had received everything to which she was entitled. The evidence does not indicate any illicit motive on the part of respondent, but under other circumstances, the potential for harm from such actions could be significant.

In Count II, respondent violated a duty owed to his client. His misconduct was negligent in that he did not ensure that the agreed breakdown of the settlement amount, including the amount paid for the attorney's fee, was set forth in the settlement pleadings approved by the workers' compensation judge. As a result, respondent caused actual harm because, absent approval of the fee greater than 20%, his fee was excessive.

The applicable baseline sanction for respondent's misconduct in this matter is suspension.

The board found the following aggravating factors are supported by the record: a prior disciplinary record, multiple offenses, submission of a false statement during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law. The board found the following mitigating factors are supported by the record: absence of a dishonest or

12

selfish motive, delay in the disciplinary proceedings, and remoteness of prior offenses.

Considering these circumstances, the board recommended that respondent be suspended from the practice of law for one year, with all but thirty days deferred. The board further recommended that any misconduct during the period of deferred suspension may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. The board also recommended that respondent be assessed with the costs and expenses of the proceeding.[3] Three board members dissented and would uphold the committee's recommendation as to sanction.

Both respondent and the ODC filed objections to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

**DISCUSSION**

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re:*

---

[3] The board did not recommend that respondent be required to make restitution to Ms. Tyson, considering that respondent acted negligently in that matter and the significant amount of time that has elapsed since the matter was settled. The board also did not agree with the hearing committee that respondent should be required to attend continuing legal education courses in the area of law office management.

*Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

In Count I, at the direction of respondent, his secretary signed the name of respondent and his client, Tammy DuBois, to a Satisfaction of Judgment. The secretary then notarized the document and returned it to opposing counsel for filing into the court record. As found by the board, this conduct violated Rules 5.3, 8.4(a), and 8.4(c) of the Rules of Professional Conduct.

Also in Count I, respondent is charged with a separate violation of Rule 8.4(c) in connection with erroneous information he provided in his response to the disciplinary complaint filed against him by Ms. DuBois. Respondent initially, and inaccurately, informed the ODC that Ms. DuBois had signed the Satisfaction of Judgment and explained how her signature had come to appear on the pleading. He subsequently realized that this information was incorrect, and he acknowledged that he had not reviewed his file at the time he provided his initial response. Under these circumstances, respondent's misstatement, which he later rectified, is not so egregious as to violate Rule 8.4(c).

In Count II, respondent is charged with collecting an unreasonable fee in a workers' compensation matter, in violation of Rule 1.5(a). Under the circumstances, we do not find this violation has been proven by clear and convincing evidence. Respondent collected attorney's fees totaling $4,000. This sum represented penalty attorney's fees pursuant to La. R.S. 23:1201(F), which are not limited by the restrictions of La. R.S. 23:1141 and for which approval by a workers' compensation judge is not required. Moreover, respondent's client agreed to the fee. Therefore, the attorney's fee collected by respondent is not unreasonable.

In Count III, respondent continued to file pleadings into the record of his former clients' cases despite the clear wording of an order of the trial court directing

him to cease doing so.[4] Respondent thereby disobeyed an obligation under the rules of a tribunal, in violation of Rule 3.4(c), and engaged in conduct prejudicial to the administration of justice, in violation of Rule 8.4(d).

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

Respondent violated duties owed to his client, the legal system, and the legal profession in Count I. He acted knowingly in allowing his secretary to sign his client's name to the Satisfaction of Judgment, which signature was notarized by the secretary and the judgment then filed into the court record. No actual harm was caused by this conduct, but the potential for harm was great.

In Count III, respondent violated duties owed to the legal system. He acted knowingly in failing to abide by the trial court's order that he cease filing pleadings on behalf of his former clients. Respondent's conduct had the potential to interfere with his former clients' cases.

The applicable baseline sanction in this matter is suspension.

In mitigation, we find the following factors: absence of a dishonest or selfish motive and character or reputation. We also find that there has been a significant

---

[4] If respondent disagreed with the court's order because he believed that his status as an intervener permitted him to file such pleadings, he should have sought appellate review of the trial court's ruling. Respondent was not free to disregard the court's order simply because he thought that his position was more legally correct than that of the trial court.

delay in these disciplinary proceedings, as the ODC did not file formal charges against respondent until November 2016, despite receiving disciplinary complaints in November 2007, May 2008, and January 2011. Finally, we find that respondent's prior disciplinary offense is remote in time, having occurred in 2004.

In aggravation, the following factors are supported by the record: a prior disciplinary record, multiple offenses, and substantial experience in the practice of law (admitted 1974).

Considering the circumstances of this case, and the substantial mitigating factors present, we find the appropriate sanction in this matter is a one-year suspension from the practice of law, with all but thirty days deferred, followed by a one-year period of unsupervised probation. With regard to costs, we will assess respondent with only the investigative costs related to Counts I and III of the formal charges and only two-thirds of the total litigation expenses. *See In re: Fuerst*, 14-0647 (La. 12/9/14), 157 So. 3d 569.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that George A. Flournoy, Louisiana Bar Roll number 5620, be and he hereby is suspended from the practice of law for a period of one year. It is further ordered that all but thirty days of the suspension shall be deferred. Following the active portion of the suspension, respondent shall be placed on unsupervised probation for a period of one year. The probationary period shall commence from the date respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. It is further

16

ordered that all investigative costs related to Counts I and III of the formal charges and two-thirds of the total litigation expenses are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

**04/03/20**

**IN RE: GEORGE A. FLOURNOY**

**ATTORNEY DISCIPLINARY PROCEEDING**

**JOHNSON, C.J.,** concurs in part, dissents in part, and assigns reasons.

I agree with the majority that respondent committed professional misconduct, but I find the discipline imposed too lenient.

In my view, respondent's misconduct relative to Count III, arising out of his continued filing of pleadings into the record of his clients' cases, despite the clear wording of an Order of the district court directing him to cease doing so, is particularly serious. If we expect the average citizen to respect a court order, we certainly should require respect from a licensed attorney. Respondent's choices were to comply with the court's order to remove himself from participating in any way in prosecution of the case on behalf of former clients, or seek supervisory review from a higher court. Respondent did neither.

Based on the facts of this case, I find a period of 90-days actual suspension would be more appropriate.